UNITED STATES DISTRICT COURT

WILMINGTON, DE

CASE NO. _____ 0-6 — 2-4-4 _____

Joan T. Kloth                                             PLAINTIFF

vs.

Southern Christian University;                           DEFENDANTS
Board of Directors; et.al

APPLICATION FOR BREACH OF IMPLIED CONTRACT
AND RELIGIOUS DISCRIMINATION

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

The Plaintiff, Joan T. Kloth, a resident of New Castle County, DE, residing at 37 Winter

Haven Drive, Apt.1, New Castle County, Newark, DE 19702 in the referenced matter

respectfully requests an Application to file a $2,058,000 lawsuit against the named Defendants,

Defendant, Southern Christian University (hereafter referred to as "SCU"), et. al, located at 1200

Taylor Avenue, Montgomery, Alabama 36117-3553 for Breach of Implied Contract to provide a

complete education and Religious Discrimination against Plaintiff, who is of a different religious

belief than the Defendants, which caused irreparable financial, physical and emotional damages

upon the Plaintiff and her family.

1.      On April 2000, Plaintiff's was diagnosed with visual problems

(Neovascularization and loss of oxygen to the corneas), which the doctors are having difficulty

treating. Plaintiff had to plan for a career she could do from home. After much research, Plaintiff

believes that her original career choice in counseling would be perfect if she could be established

before losing her eyesight. Plaintiff made the decision to attend school full-time so Plaintiff

could re-enter into the workforce as soon as possible.     Unfortunately, graduate schools in Plaintiff's state of CT did not and still does not provide full-time programs for a counseling career and/or were 2 hours from her home and/or classes were held only at night.  Plaintiff has a difficult time driving at night due to her failing eyesight and ring sarcoma. (Exhibits A and B) Plaintiff was forced to research schools, which would allow her to pursue her career in counseling via the internet also known as distance learning. While searching the Internet, Plaintiff discovered Southern Christian University offered the curriculum necessary to completing a Dual Masters in Marriage and Family Therapy and Professional Counseling.

2.     Plaintiff contacted Marvin Cox, the Graduate Advisor for the School of Human Services at Southern Christian University. Plaintiff was advised she could complete her Masters in 2 years and one course if she attended full-time taking 3 to 4 courses per semester.  This would allow her to graduate by December 2004 at the earliest or June 2005 at the latest, if Plaintiff had to take one additional class in January of 2005.

3.     Prior to and through September 30, 2001, Plaintiff received several emails responding to her inquiry regarding the school's residency requirements, course requirements, accreditation and pending Commission on Accreditation for Marriage and Family Therapy Education (hereafter referred to as COAMFTE) certification and whether her non-Christian religious affiliation was an issue.  Plaintiff was assured in these email letters that the school was accredited and by the time Plaintiff was to graduate, the school would be COAMFTE certified. (Exhibit C).  Plaintiff was also informed that her religious differences were a non-issue.

4.     Plaintiff made numerous inquiries both by email and over the phone to SCU asking about their program qualifications, whether the state of Connecticut would accept them (Connecticut would accept them if they were COAMFTE certified) and if there was a residency required to complete her program (no residency requirements at that time).  Numerous responses

2

included details that led Plaintiff to believe that the school would be COAMFTE certified as well as provide her a complete education.

5.    Throughout the year long process of inquiries, Plaintiff was never notified that finding a clinical site would be solely the students responsibility and the school would not be assisting the student at all.  Nor was plaintiff informed that finding an acceptable clinical training site was extremely difficult.  Plaintiff repeatedly inquired as to any other possible problems or issues in the educational process she needed to be aware of in order for her to obtain her state license.

6.    Plaintiff contacted her state, Connecticut, on numerous occasions to make sure that the information she was given about the school would be acceptable for obtaining a license in her state.  This included the information about SCU being COAMFTE certified, accredited and the hours needed for clinical training.  All matched up with what her state required so long as she got the training she needed.

7.    January 2002, Plaintiff began her studies for obtaining a dual masters degree in Marriage and Family Therapy and Professional Counseling.  The first of her dual degree would be to complete her Masters in Marriage and Family Therapy.   The second portion, the Professional Counseling, could be completed with 2 to 3 additional classes once her first masters were completed.

8.    November 2002, Plaintiff realized she was going through the program at an accelerated rate especially if she started taking 4 courses per semester as she intended to do.  At this point, she began to inquire about the clinical training part of the program.

9.    December 2002, Plaintiff was referred to Dr. Wayne Perry, who eventually emailed her the manuals for Marriage and Family Therapy and Professional Counseling.  It was at this point, some 15 credits or more into the Plaintiff's degree program that she found out about

the clause, "Student to find clinical site." Plaintiff understood this to mean that the student found the site and the Professor and school assisted her in procuring the site.

10.    At this time, Plaintiff had no contact with other students who were in clinical settings to be made aware of the difficulties involved in finding an approved clinical site. Plaintiff commenced efforts to find a clinical site unaware that most of her fellow students had or would be having an extremely difficult time finding a clinical site.

11.    January 2003, Spring Semester begins. Plaintiff informs her classmates and professors that she is Jewish. Two other students also announce that they are not Christian faiths but of other faiths. Problems begin to surface between these students of non-Christian faith and two very staunch Christian students who do not tolerate others that are not Christian.

12.    Plaintiff began to experience issues with two of her professors who she felt were disrespecting her. Plaintiff looked beyond it and tries to brush it off.

13.    March 2003, Plaintiff is informed by another student who also announced she was disrespected for not being Christian that she had felt the same attitude from the same teachers and students. This same student informed her that another student, "Pat" who had previously filed a lawsuit against the school, a case which was settled out of court with a gag-order, had experienced changes once she admitted to not being of the Christian faith and that the school had tried to charge her additional fees for services she never received.

14.    March/April, 2003, Plaintiff began to inquire about clinical training in CT. Plaintiff received in excess of 15 negative responses or no response from agencies, and offices in CT. Plaintiff contacted Dr. Perry who told her "Tough Luck. It is the student's sole responsibility to find a clinical site."

15.    About July 18, 2003, Plaintiff found out that the Defendant does not intend to procure their COAMFTE certification.

16.    Plaintiff has created a very strong relationship with her Advisor, Marvin Cox. They email weekly and he has been very knowledgeable and helpful in all facets of the Plaintiff's graduate degree.

17.    Marvin Cox, Plaintiff's Advisor, was let go from the school. Plaintiff over the past 1.5 years has a created a wonderful rapport with Marvin Cox. He seemed to be the only honest person on the staff who knew what to do. Many students are disappointed at this loss.

18.    Plaintiff tries to keep in contact with Mr. Cox through his home and new work phone numbers, but it seems that the school has put a gag order on him to not discuss anything with the Plaintiff. Plaintiff knows this because Mr. Cox and the Plaintiff had a very strong email relationship discussing issues outside of school such as life, families and Gone with the Wind. Plaintiff and Mr. Cox actually had nicknames for each other from Gone with the Wind, with the plaintiff referred to as Scarlet because she was from the North and Mr. Cox as Ret, as he was from the South. There would have been no reason for Mr. Cox to cut off this personal relationship other than threats from the school or a gag order.

19.    September/October 2003, Plaintiff was not deterred and continued looking for a site. Thirty negative responses or no responses later, Plaintiff re-contacted Dr Perry who again reiterated that it was the student's sole responsibility to find a site. Plaintiff was finding plenty of sites, but no one would take her because of her distance learning program and school.

20.    November 2003, Plaintiff continued to send letters, faxes, emails, and even resorted to doing walk-ins in order to find a clinical site. Plaintiff continued to receive only negative responses.

21.    Plaintiff created a partial list of the clinical sites she has contacted so far. (Exhibit D)

22.    Throughout this time, Plaintiff repeatedly contacted Dr. Perry regarding her problems finding a clinical site.  Repeatedly, Dr. Perry stated that no one else was having this kind of a problem finding a site.

23.    About December 2003, Plaintiff began contacting the Accreditation Agency; Commission on Colleges, Southern Association of Colleges and Schools, regarding the problems Plaintiff was having finding a clinical site and the Defendant's refusal to assist Plaintiff despite solid evidence of her unsuccessful efforts to find a place.

24.    About December 2003, Accreditation agency contacted the Defendant after Plaintiff complained 3 times to their agent, Jack Allen.  Mr. Allen spoke with Dr. Perry.  Dr. Perry then contacted the Plaintiff, via email, asking for the list of possible clinical sites and individuals contacted by Plaintiff and that plaintiff had created a journal for thus far.  Plaintiff's list at this time contained 30-40 contacts.  Dr. Perry made one phone call to "Robin" at one of the sites listed and sent emails to Plaintiff with contact information for "Robin".  Plaintiff attempted to contact "Robin" on three different occasions but never received a response.  Plaintiff then contacted Dr. Perry to advise him "Robin" is not responding.  Dr. Perry re-contacted "Robin" and again told Plaintiff to call "Robin" which Plaintiff did immediately. It took Plaintiff two additional attempts before "Robin" finally contacted Plaintiff to tell her she does not take students from outside of Connecticut state schools and even if she did, there were no openings. Plaintiff contacted Dr. Perry, who never responded nor did he attempt to contact any of the other contacts on Plaintiff's list. Dr. Perry was now well aware of Plaintiff's problems in finding a clinical training site.

25.    On or about December 2003, Plaintiff contacted the Accreditation Agency again about her inability to procure a clinical site.  Jack Allen again contacted the school, and spoke with John White.

26.     About December 12, 2003, John White contacted the Plaintiff. Mr. White then made one phone call to one Head Start Program and provided this information to Plaintiff.

27.     About December 17, 2003, Plaintiff contacted the Head Start Program but after one week had received no return phone call.

28.     December 23, 2003 Plaintiff contacted John White and informed him of the fact that Plaintiff did not receive a call back from the contact at the Head Start Program.

29.     December 23, 2003, Plaintiff again left a message for the Director at the Head Start program and still received no response in the week that followed.

30.     December 29th, 2003, Plaintiff contacted Mr. White to inform him that she still had not heard back from the Director.

31.     December 31, 2003, Plaintiff filed an appealing hearing concerning Dr. Trent. She requests to be able to take her last remaining course that would have been taken with Dr. Trent at another school because of the many issues involving Dr. Trent, his teaching methods and his blatant disregard for other different religious beliefs.  (Exhibit E)

32.     No hearing was held. The committee based its decision upon Plaintiff's letter. Appeal is granted and Plaintiff takes one course outside of SCU at Capella University.  Plaintiff receives an "A" in this class.  (Exhibit F)

33.     On or about January 5, 2004, Plaintiff called the Head Start program again leaving a message for the director.  One week passed and still no response from director.

34.     On or about January 9, Plaintiff contacted Mr. White to inform him this was the 3rd week she had attempted to reach the Head Start Director and still had not received a response.

35.     Mr. White never once responded to her about her inability to reach the Head Start director or about trying to re-contact the director or contact another site on her behalf.

36.     September 2004, Plaintiff has only 7 classes left to take in order to complete her degree and must begin her Practicum/clinical training courses whether she has a site or not in order to maintain full-time status for the rest of her graduate program.

37.     September/October 2004, Plaintiff found a private counselor who volunteered her services and would not charge Plaintiff to supervise her clinical work.  However, this counselor could not provide any clients for the Plaintiff thus Plaintiff must find her own clients.  Plaintiff conducts and extensive search utilizing every available means possible to find private clients.  Plaintiff contacted courts, judges, agencies, churches, temples, daycares, senior centers, family court directors and so on offering her counseling services for free but was unsuccessful in procuring any positive responses or clients.

38.     In order for Plaintiff to get credit for her course work and to graduate, she must accumulate 600 hours of clinical work broken down into 250 hours of individual, 250 couples/group counseling and 100 supervised hours.

39.     Plaintiff enlisted the help of friends and family to assist her in finding clients.  Plaintiff is successful in finding a few who will allow her to use them as guinea pigs temporarily but it is not enough to complete her degree but enough to at least pass her practicum and clinical classes.

40.     On or about September 15 2004, Plaintiff started to inquire about clinical training sites outside of CT in NY and NJ but receives nothing but negative responses.

41.     Plaintiff begins to inquire and ask for help from her classmates who are shocked to find out that they are not the only ones who have been unsuccessful finding a site.  In some cases, her classmates were also still in the same boat as Plaintiff without a site but having to start taking their clinical classes.

42.     On or about November 2004, without the knowledge of the Plaintiff, Dr. Perry contacted Plaintiff's volunteer supervisor because the supervisor's license was about to expire. Plaintiff's supervisor informs Dr. Perry that she will get it to him as soon as it comes in, not realizing that the state never got her application.

43.     December 2004, Plaintiff finishes her first Practicum/clinical semester still with no site and not a consistent amount of clients to achieve her total number of clinical hours needed to receive her degree.

44.     Sometime between Fall semester 2004 and Spring semester 2005, Dr. Perry provided a survey to the practicum/clinical students asking them whether they would be willing to pay to have the school assist them with finding a clinical training site. It is quite apparent at this point that the school knows there was a serious problem finding clinical sites.

45.     January 2005, Plaintiff has few classes left to complete her degree and must take her next clinical training class in order to maintain her full-time status and stay on track with completing her degree, though she is now behind her original graduation date because of her inability to find a clinical training site.

46.     Plaintiff asked supervisor to continue supervising Plaintiff in the hopes that maybe Plaintiff would find a site or clients for Plaintiff's spring semester. Supervisor re-fills out all the same forms as the first time Supervised Semester including submitting her un-renewed license back to Plaintiff's professor, Dr. Perry. Dr. Perry did not once mention to the supervisor or to the Plaintiff that the supervisor's license was now expired. Plaintiff is unaware that the Supervisors license had expired.

47.     February 20, 2005, Plaintiff has exhausted all resources in CT, NY and NJ areas. Plaintiff moves her 11-year-old daughter to Delaware in an attempt to find a clinical training site. This move takes the Plaintiff and her daughter away from Plaintiff's husband, which is also her

daughter's father.  This is in an effort to try to locate a clinical site.  Plaintiff stayed in hotels and motels for the first few weeks and then finally was forced to rent a place to reside.

48.    March 2005, Plaintiff interviewed with Jewish Community Center for a counseling position but is turned down.  It is the first time Plaintiff was actually told the truth about why she has been unable to find a site.  The director of the Jewish Community Center explained that it is because of the refusal of the Plaintiff's school's to create a personal rapport before, during or after other than via email and their arrogant attitude about it.

49.    Plaintiff tries not to be deterred and continued to send out resumes and requests to for clinical training.

50.    June 2005, Plaintiff completes her 2nd semester of clinical training but still is unable to procure a clinical site or enough clients privately to accumulate enough hours to complete her requirements for her degree.  She has three remaining classes left to complete her degree, one of which is the last of the three clinical classes she must take.

51.    July 2005, Plaintiff takes the last two of the three classes she has left to take.

52.    August 13, 2005, Plaintiff files for an appeals hearing with the school to have the school assume her student loans because of their failure to provide a complete education.  (Exhibit G)

53.    On or about August 24, 2005 an appeals hearing was held via telephone.  In attendance were Rick Johnson, Anita Baker, Barbara Turner, Elaine Tarence, Rosemary Kennington, Douglas Patterson, Barbara Alford and the Plaintiff.  Neither Dr. Perry nor John White attended.

54.    Plaintiff requested a copy of Dr. Perry and Dr. White's statements that were used during the appeals hearing.  Plaintiff never received them.  Only received a copy of the appeals meeting transcript with a bill for $80.00.  At no time during the appeal hearing, when Plaintiff

requested the statements of Dr. Perry and Mr. White, was she informed that there would be a cost to obtain them, let alone she was given the wrong information.

55.    August 26, 2006, Plaintiff receives an email from the Appeals Committee who has denied Plaintiff's request. (Exhibit H)

56.    Plaintiff follows instruction to contact the SCU Executive Leadership Team via John White if Plaintiff was unsatisfied with the Appeals Committee's decision. Plaintiff received no response.

57.    Exact date in 2005 unknown, Dr. Perry begins to harass Plaintiff's volunteer Supervisor. He reports the supervisor to the state of CT for failure to renew her license.

58.    The State of CT tells the Supervisor that it is a mute point because she was not charging the Plaintiff for her supervision. The state just requires and advises the Supervisor to get her fees in for renewal immediately.

59.    The State of CT then contacted Dr. Perry to tell him that the issue is mute. Dr. Perry advised the State agency that he does not care, he wants charges and penalties and her license revoked.

60.    The State again contacts Plaintiff's Supervisor. It is determined that since the Supervisor was under the guidance of the School and Dr. Perry who is a licensed Supervisor, that it is still a mute point. Supervisor's license is renewed.

61.    The State of CT again contacted Dr. Perry who again insists that the state revoke her license and so on.

62.    The State of CT re-contacts Plaintiff's Supervisor with this information. And it is decided that they will charge her a re-instatement fee and her license is renewed

63.    Plaintiff has no more classes to take except for her last clinical training class but since she has neither site nor supervisor as Dr. Perry has now tried to destroy her volunteer

Supervisor's career and livelihood, Plaintiff is forced to drop out of school, without completing her desired degree.

64.    September 28, 2005, Accreditation Agency, Commission on Colleges, Southern Association of Colleges and Schools informs the Plaintiff that she should have filed a formal complaint against the school.  At the time, Plaintiff filed a formal complaint, which is sent on to SCU on October 27, 2005.  (Exhibit I & J)

65.    September 30, 2005, The Defendant received a phone call from an outside source requesting information about how to get in touch with the Plaintiff as they want to do a reprint of one of the Plaintiff's many articles on High Conflict Divorce, Psychological abuses, Parental Alienation Syndrome and Hostile Aggressive Parenting.  Defendant, John White, does contact Plaintiff via email with the inquiries contact information.  At this point, it should be apparent to the Defendant that though Plaintiff has not even graduated, her work is already being published due to the high caliber and quality of her research and skills.  Because Plaintiff does not have a degree, Plaintiff cannot be paid or have the appropriate credit attributed to her to further her career.

66.    November 2005, Commission on Colleges states that although what the school is doing to Plaintiff is horrible, there is nothing they can do as the school has not violated any of the Commissions policies.

67.    November 2005, Plaintiff sent a copy of her formal complaint to ACLU, Attorney Generals, Consumer Affairs, Department of Educations and Attorneys.  (Exhibit I & J)

68.    Plaintiff has contacted the AG in both Alabama where the Defendant is located and in CT where the Plaintiff was located, as well as Consumer affairs in both states.  Both state agencies state that because it is an educational issue it is outside their parameters to help her.

69.    Plaintiff contacted the Department of Education (hereafter referred to as DOE) both federal and state to obtain assistance.  They informed her that because the school is a private secondary institution it does not fall under the DOE as they only deal with public institutions.

70.    Plaintiff had contacted dozens of attorneys but could not afford their services. She is advised this case is far too complicated for them to handle as it involves at least two states.

71.    Plaintiff had attempted to find a pro-bono attorney, as she was unemployed and living in DE.  Pro-bono attorneys will not take the case, as it is too complicated to take for free, as it again involves at least two states.

72.    February 2006, Plaintiff is again contacted about reprinting another one of her papers on Divorce, this time by the Connecticut Association of Marriage and Family Therapy. Plaintiff approves the reprint knowing that it will do nothing for her as it appears she is never going to graduate, however, she feels the information in her paper is invaluable to the counselors and other professionals that would read it to not let it be made available to them.

73.    March 7, 2006, Plaintiff was directed to contact the AAMFT (American Association for Marriage and Family Therapy) about her situation, as she is a member.  AAMFT is the same organization the Defendant claimed would be providing their COAMFTE certification.  Plaintiff spoke to Jeff Harmon who stated that the school was denied even candidacy which is the prerequisite for COAMFTE certification for several reasons.  Mr. Harmon could not tell Plaintiff why as it is considered protected by privacy laws but he could tell Plaintiff that they were denied.  He also stated that a school must provide COMPLETE educational experience in order to be COAMFTE certified.  Though COAMFTE is voluntary, the Defendant was not truthful to the Plaintiff when Plaintiff questioned the Defendant about not obtaining the promised COAMFTE certification. Plaintiff was told it was a monetary issue.  It was stated to the Plaintiff that they felt the money could be better spent elsewhere.  It appears

13

Plaintiff is forced to subpoena any and all documents pertaining to the certification of Defendant. It would seem to Plaintiff that obtaining certification would be a critical issue to the school.

74.    Plaintiff has contacted over 100 places inquiring about doing a clinical training, going outside the box to create any and all possible options to complete her degree.  (Exhibit K)

75.    Plaintiff has a 3.9 GPA out of a possible 4.0 GPA.  (Exhibit L)

76.    Plaintiff is now 2.67 credits away from her degree.  This is less than a class (3 credits), though it seems that Dr. Perry has taken away all of Plaintiff's credit hours acquired while under the Volunteer Supervisor, despite the fact that Dr. Perry is a licensed supervisor. (Exhibit M)

77.    Plaintiff is $58,000 in student loan debt for a degree it she will never receive because she cannot obtain a clinical training site. (Exhibit N)

78.    Plaintiff and her family has endured excessive financial, emotional and physical hardships related to this breach of implied contract and failure to properly assist the Plaintiff in obtaining a clinical training site.  Plaintiff has continued to experience extreme difficulty trying to investigate why the school had/has problems getting accredited and Plaintiff finds it will be necessary to subpoena documents and even individuals in order to shed light on why the school has not followed through assisting Plaintiff to obtain a clinic site to complete and obtain her degree.

WHEREFORE, the Plaintiff respectfully requests that the Court find the Defendant in Breach of the Implied contract to provide the student with a complete education. Furthermore, Plaintiff requests this Court order the Defendant to pay all costs, including court costs, attorney's fees for the bringing of this motion, including $58,000 in student loans for a degree Plaintiff is unable to obtain.   Plaintiff was denied the opportunity to obtain a degree, which would have lead to her Licensure as a therapist.  This impediment cost the Plaintiff a livelihood and lost income

over the next 30 years calculated at a part-time rate for a minimum monetary loss of $2,000,000.

Plaintiff also incurred and continues to incur emotional damages and financial damages from the

devastation incurred in trying to find a clinical training site to complete her degree.  Plaintiff

requests the courts find in Plaintiff's favor along with any other such relief as the Court may

deem the plaintiff is entitled to.

> Respectfully submitted:
>
> JOAN V. KLOTH
> 37 Winter Haven Drive, Apt. 1
> Newark, DE 19702
> Pro-Se



 **DR. TYLER PHILPOTT**
OPTOMETRIST

BETHEL PROFESSIONAL BUILDING
5 SCHOOL STREET
BETHEL, CONNECTICUT 06801
(203) 798-2020

April 12, 2000

To Whom It May Concern:

RE:  Joan Kloth
DOB:  3/28/62

Joan Kloth has been seen as a patient in this office since August 1999 for routine vision care and contact lens services.  Joan wears medically necessary soft contact lenses for her high myopic astigmatism.  Contact lenses are medically necessary because Joan's best acuity is significantly better with contact lenses than with spectacle lenses and because Joan finds the ring scotoma induced by her eyeglasses to be disabling in moving about the environment and driving a car.  At her last contact lens follow up exam a potentially serious complication was detected requiring that Joan immediately reduce her contact lens wearing time by at least 30 %.  This has made it necessary for Joan to wear her eyeglasses for longer periods during the day with a consequent limitation of her ability to function visually.  I am hoping that this contact lens complication can be resolved swiftly and effectively.  If you have any questions please do not hesitate to call my office.

Sincerely,

Tyler Philpott

Tp/cf



EXHIBIT
B

Yale University
SCHOOL OF MEDICINE



**DEPARTMENT OF OPHTHALMOLOGY
AND VISUAL SCIENCE**
330 Cedar Street
P.O. Box 208061
New Haven, CT 06520-8061

**ADMINISTRATION**
M. Bruce Shields, M.D., *Chairman*
Lisa Danko, *Administrator*

**COMPREHENSIVE AND CATARACTS**
Brian M. DeBroff, M.D.
Susan H. Forster, M.D.
Anthony Romania, M.D.
Andrew Wong, M.D.

**CORNEA AND EXTERNAL DISEASE,
CONTACT LENS**
Ali Khodadoust, M.D.
Shachar Tauber, M.D.
Roy Smith, O.D.

**GLAUCOMA**
Marvin L. Sears, M.D.
George Shafranov, M.D.
M. Bruce Shields, M.D.

**LOW VISION**
David W. Parke, M.D.

**NEURO-OPHTHALMOLOGY**
Thomas J. Walsh, M.D.

**OPHTHALMIC PATHOLOGY**
John Sinard, M.D., Ph.D.

**OPHTHALMIC PLASTIC AND
ORBITAL SURGERY**
Jane I. Olson, M.D.

**PEDIATRICS AND STRABISMUS**
Caleb Gonzalez, M.D.

**REFRACTIVE SURGERY**
Shachar Tauber, M.D.

**RETINA AND VITREOUS**
Daniel M. Berinstein, M.D.
Ray F. Gariano, M.D., Ph.D.
Kathleen M. Stoessel, M.D.

**UVEITIS**
I. Willard Abrahams, M.D.

**RESEARCH FACULTY**
Colin J. Barnstable, D.Phil.
Miguel Coca-Prados, Ph.D.
Nigel W. Daw, Ph.D.
Douglas S. Gregory, Ph.D.
Thomas E. Hughes, Ph.D.
Marvin L. Sears, M.D.
Ning Tian, M.D., Ph.D.

**APPOINTMENTS AND INFORMATION**
(203) 785-2020
1-800-395-7949
Fax: (203) 785-6123
Website: http://info.med.yale.edu/clinop

September 27, 2000

Scott Spector, M.D.
605 West Avenue
Norwalk, CT 06850

RE: JOAN KLOTH

Dear Dr. Spector:

Ms. Joan Kloth was seen in consultation at the Yale Eye Center, Cornea Service on September 27, 2000 with the complaint of being contact lens intolerant and stating that she had neovascularization of her corneas.

Her past ocular history is significant for pinguicula removal, according to the patient, in either September or October of 1997 or 1998. This was done to facilitate increased tolerance for contact lens wear, although it did not have much effect, according to the patient. The patient states that her visual acuity is not corrected well with glasses and she gets a lot of ring scotoma and poor night vision. She is sent for consideration of refractive surgery. The patient also states that she did have frequent trips back and forth to an eye doctor in New York as a child and was made to do eye exercises, although she cannot be sure she had any strabismus or amblyopia.

She is currently taking no ophthalmic medications and denies any medical problems other than anxiety. She takes Busbar which was started in September. Her mother has a history of retinal problems. The patient is allergic to Tetracycline, rarely drinks alcohol and denies smoking. With correction and her current glasses, the patient sees 20/40 in the right eye and 20/60 +2 in the left eye. The best corrected vision in the right eye is 20/30 and 20/40 in the left eye. Manifest refraction revealed a prescription of -9.50 -1.25 at 180 degrees, giving the vision of 20/40 and left eye at -9.50 -0.75 at 150 degrees, giving 20/40 vision. Confrontation visual fields revealed count fingers OU. Pupils were 4-2 mm OU with no afferent pupillary defect. Extraocular movements were intact. Cover-uncover test was unremarkable. There was no Munson and no Rizzuti sign present on examination of the anterior segment. Lids and lashes were within normal limits. Conjunctiva and sclera were within normal limits. Cornea revealed superior neovascular pannus, approximately 1.5-2 mm OU. Keratometry readings were taken and revealed a clinical correction of 7.1 and 7.25 in the right eye and 7.33 and 7.13 at 162 in the left eye. Ultrasound pachymetry in the right eye revealed thickness of 565 micron in the right and 560 micron. Intraocular pressure at approximately 4:30 p.m. was 15 OU. Dilated funduscopic examination was performed; cup to disc ratio of approximately 0.3 with full rims OU. The periphery was flat and there was normal vessel caliber and no peripheral breaks were noted. The vitreous was clear.

Re: Joan Kloth

Assessment and Plan:

Patient with corneal neovascularization OU, spectacle intolerant, according to notes received from her other ophthalmologists and patient could be considered a candidate for RK, PRK, ALK, LASIK, contact lens or phakic intraocular lens. The best corrected vision is currently 20/40 with the contact lens removed. We suspect contact lens warpage. Corneal neovascularization limits the contact lens use. Refractive surgery may be an option. The patient has been instructed not to wear her contact lens for a minimum of three weeks. This includes not even for a few moments to take her son or daughter to school. We plan to see her in approximately three to four weeks time. She is not to wear the contact lenses and we will get an ORB scan, corneal topography, repeat the refraction and get a cycloplegic refraction. Please do not hesitate to contact the Eye Center with any questions or concerns regarding the care of this patient.

Sincerely,

Dr. Reistad

Shachar Tauber, M.D.
Director of Corneal and Refractive Surgery

ST:ww 20476

cc: Joan Kloth

Dr. Tyler Philpott
5 School St.
Bethel, CT 06801

**EXHIBIT**

*C*

Attn: Thanks for contacting us concerning the Master of Science in Marriage and Family Therapy   Page 1 of 1

Dr. John H. White.

Subj:   Master of Science in Marriage and Family Therapy/Professional Counseling
Date:   15.500(?) 10:30:45 AM Eastern Standard Time
From:   [illegible]
To:     [illegible]
Sent from the Internet [illegible]

Enroll - AtSCu

Download Core List & send to State
Board of Credentials
*#5* Ask them to clarify that course [illegible]

Hi Joan,

Thanks for contacting us concerning the Master of Science in Marriage and Family Therapy. Our MFT program is committed to the very highest standards of the MFT profession in the United States. In addition to regional accreditation by the Southern Association of Colleges and Schools (SACS). Southern Christian University is *Candidacy Eligible* for the COAMFTE (Commission On Accreditation for Marriage and Family Therapy Education) accreditation awarded by the American Association of Marriage and Family Therapists, and approved by the U.S. Department of Education. This accreditation is the highest certification awarded to a MFT program. COAMFTE candidacy and accreditation makes getting a license easier, either as a LPC or LMFT. Most states automatically accept graduation from a COAMFTE accredited program as meeting the educational requirements, while graduation from a non-accredited school means the student may have to prove that they have indeed met the educational requirements. We expect *Full Candidacy* starts in late 2002 and *Full Accreditation* around 2005.

Many students pursue dual licensure as a Licensed Professional Counselor (LPC), and a Licensed Marriage and Family Therapist (LMFT). *Dual licensure* can be achieved with the completion of *one degree* due to the congruity of the degree programs. The student must complete an additional 12 credit hours from the other discipline. Upon completion of a degree program, the student will have the educational foundation to sit for their state licensure exam, providing one meets all other state requirements.

To learn your state's licensure requirements for Marriage and Family Therapists, visit www.aamft.org/resources/boardcontacts.htm. For licensure information on Professional Counseling in your state, contact www.aacd.org/contact.htm.

There are no residency requirements for the Master of Science students. Spring 2002 semester schedule can be accessed from our website at www.southernchristian.edu.

I am sending you an application packet with information on the degree programs. Please feel free to contact me with any questions you may have.

Sincerely yours,
Marvin Cox
Graduate Advisor
School of Human Services
Southern Christian University
800-351-4040 ext. 210
marvincox@southernchristian.edu

**Due to an increase in distance learning inquiries, I urge you to contact me directly by phone or email if you are seriously considering enrolling for the Spring 2002 Semester. My email address and toll free number are both shown below.**

Friday, November 30, 2001 America Online: Putzangel



| | NAME | CONTACT | PHONE NUMBER | REASON |
|---|---|---|---|---|
| 1. | Bell, Betsy (Elizabeth) | Private Practitioner | 203-264-8447 | No works from her home. |
| 2. | Bellotti, Michael | Private Practioner | 203-264-1661 | No, small practice |
| 3. | Brockett, Daniel | Private Practitioner | 203-264-3050 | No, small practice |
| 4. | Catholic Family Services Waterbury | James Osborn, Clinical Director | 203-755-1196 | Left Messages (LMs) |
| 5. | Central Naugatuck Valley Help | | 203-256-8984 x108 | LMs |
| 6. | Child & Adolescent Services | Bill Mannle, Coordinator | 203-634-7073 | LMs |
| 7. | Child Guidance Clinic | Christine Dowser | 203-756-7287 | LMs |
| 8. | Children's Home of Cromwell | Judy Gardner | 860-635-6010 x316 | No room, too late for this year and possibly next year |
| 9. | CMHA/Worth Program of Waterbury | Mark Johnson or Pam Pratt | 203-596-9724 Mark or 860-224-8192 | No liability, does not accept my schooling, claimed I was at a non-accredited school |
| 10. | Community Health Center | Sally | 860-632-2201 | No, MSW's only, told them about training, said No way. |
| 11. | Connecticut Valley Hospital | HR department | 860-262-5896 | LMs |
| 12. | Connection In-Patient (Rehab) | Lynn Spencer | 860-343-5505 | LMs |
| 13. | Court Support Services | Deb C | 860-721-2100 | No response, left several messages |
| 14. | Davidow, Kenneth | Private Practitioner | 203-264-1150 | No. |
| 15. | Department of Children and Family Services | Romelia Sharpe | 860-560-5021,860-550-6418, 860-550-6693 | Only take State Schools |
| 16. | Family Counseling Center of Newtown | Terry Balckmere | 203-426-8103 | No, not taking students at the moment |
| 17. | Family Intervention in Waterbury | | 203-753-2153 | LMs |

| 18. | Forensic Laboratory in Middletown/Meriden | Forensic Director | 860-262-5499 | Referred to Leone |
|---|---|---|---|---|
| 19. | Forensic Laboratory in Middletown/Meriden | William Boylan | 860-262-6339 | No. |
| 20. | Forensic Laboratory in Middletown/Meriden | Dr. Dean Leone | 860-262-5461 | No, forwarded my stuff to Shawn, never heard from him/her |
| 21. | Gray, Jeanne | Private Practitioner | 203-266-4712 | LMs |
| 22. | Greschen, Karen | Private Practitioner | 860-347-3466 | Left several messages, Never returned my last phone message |
| 23. | Hart, Sean | Private Practitioner | 203-262-5453 | No |
| 24. | Huges, Gail | Private Practioner | 203-263-4475 | LMs |
| 25. | Jewish Community Center of Western Connecticut | Debbie Horowtiz | 203-267-3177 | No programs |
| 26. | Kensington Green | Pattie Happy | 203-267-7100 | No counselors |
| 27. | Ledder, Robert W. | Private Practitioner | 860-826-3366 | LMs, and e-mailed |
| 28. | MCCA of Middlebury | Maureen Bigs | 203-598-0828, 203-792-4515x121 | LMs |
| 29. | Middlebury Youth and Family Services | Pat | 203-748-1441 | No longer taking students |
| 30. | Middlesex Hospital/Mental Health Center | Terri Depetro | 860-344-6000 | No couples, no groups, only LPC's |
| 31. | Mid-State Behavioral Health | Barbara Gingreco | 203-238-1184 | LMs |
| 32. | Ohanesian, Paul G. | Private Practitioner | 860-827-1375 | LMs |
| 33. | Patlikh, Asha | Private Practioner | 860-635-6010 | LMs, and e-mailed |
| 34. | Rushford (Rehab) In & Out Patient | Lori | 860-346-0300, 203-238-6892 | No |
| 35. | Rushford Adult Services | Barbara Bugella | 203-634-7415 | LMs |
| 36. | Safe Haven of Southbury | Peggy Pannagrossi | 203-575-0388 | LMs |
| 37. | St. Francis Behavioral Care | | 860-342-0480 | No longer in Portland, CT |
| 38. | St. Mary's Hospital | Diane Santos | 203-709-6219 | Only MSW's available, refused to do training. |
| 39. | Waterbury Family Services | Doreen Butner and Jason, | 203-756-8317 | No longer doing it |

| | | LMFT | | |
|---|---|---|---|---|
| 40. | Waterbury Hospital | Sandy Lombardi | 203-573-6017 | LMs, sent me to Jean Horan as well |
| 41. | Waterbury Hospital Behavioral Health Services | Jean Horan | 203-573-7246 | No return call about internship |
| 42. | Waterbury Youth and Family Services | Maggie | 203-573-0264 | No, Dave only one and he is no longer doing it? |
| 43. | Wheeler | Bill Kain, Ken Bangs, Elizabeth Cannata all contacts for different programs | 860-793-3567, 860-793-3816 | Left Messages (LMs) |
| 44. | 20 Churches/Temples in the Southbury, Woodbury, Oxford, Newtown areas | Sent letters, e-mails, and phoned | See phone book | No response from any or they are not interested or they have no one to oversee me. |
| 45. | 33 Attorneys/Family Courts/Judges from CT to Westchester NY and even into NJ | Sent Letters, e-mails and phoned | Documented on another list as there are far too many to reprint | No response or not interested. |
| 46. | Jewish Family Counseling Center in Wilmington, DE | Jean? | E-mailed and went for interview | Not interested because my school refuses to create a personal rapport with them other than by e-mail. |
| 47. | Counseling Center on Main Street, Newark DE. | | Walked In | Not interested. |
| 48. | DE Division of Services for Children, Youth and Their families, Psychiatric social Worker II | | Online Application and Mailed | No response except that I scored 80% on their review of qualifications. |
| 49. | DE Department of Health and Human Services, Youth Rehabilitation Counselor | | Online Application and Mailed | No response except that I scored 80% on their review of qualifications. |
| | | | | |
| | | | | |

| 50. | DE Department of Health and Human Services, Family Crisis Therapist | | Online Application and Mailed | No response except that I scored 80% on their review of qualifications. |
|---|---|---|---|---|

LMs = Left Messages



December 31, 2003

Dear Appeals and Grievance Committee:

I really wish I did not have to go this route. Many of the students and I thought this problem had been resolved back two semesters ago, but apparently it was not.

Two semesters ago, I had Dr. Trent for Theories of Counseling and Psychotherapy. I understood that he was a hard teacher, which I had no issue with. What I took issue with, was his biased and subjective/one sided attitudes. Below you will find some excerpts of letters from another student who talks about these issues. Both she and I would repeatedly find errors in his quizzes or exams. We would state exact page, paragraph and sentence to support our answers. Dr. Trent would repeatedly respond with answers that either did not make sense or that skirted around the issue.

In addition, at first I did not give much credence to Dr. Trent's constant reciting of the Bible in context to issues that were unrelated. But when this other Student, a devout Christian began to mention it, I realized I was not alone in my thoughts about this, which was further confirmed by another student. I began contacting my advisor, Marvin Cox, concerning these problems.

At one point, I believe I had a good half dozen students I was in communication with about the quiz problems and over zealous Bible renditions. I guess what was most curious is that we realized many of us had the same questions on the quiz, yet when we wrote to Dr. Trent about our answers, quoting the exact same pages, paragraph's and sentences to back up our answers, Dr. Trent disregarded our proof and information. What was even weirder was that we all received a different response to our test question error to the same test question. And none of us were given credit for these answers, even though we all had the same answer and information to back up our claims.

I guess the heart of the matter here is his judgmental attitude toward those who do not believe as strongly or vigorously in taking the Bible literally. We see it as a tool to teach us lessons of right and wrong, just as all religious books teach lessons of right and wrong. Which leads some of us to one of our biggest concerns that his judgmental attitude is going to be prejudiced in teaching Human Sexual Development, especially when it comes to the topic of Homosexuals. Though I, myself, am a happily married woman with a husband, I am quite sure that I will have clients whose sexual orientation is not the same as mine. As well, I have many friends who are homosexual and who I have nothing against their preference. Thus, I feel my beliefs and my fellow students beliefs will be compromised if Dr. Trent berates and denigrates homosexuals because of his biblical up bringing. Our concern is that it will taint the class and make it difficult for him to teach Human Sexuality objectively.

Apparently, each of these students who took issue with Dr. Trent, had been bringing the very same issues up to their Counselor, Marvin Cox. Around about this point, I contacted Marvin to let him know what I had now heard. He and I brought the issue up to Dr. Patterson. Several of these students later informed me that they were seriously contemplating leaving the school in part because of Dr. Trent and his teaching methods.

To resolve the issue, Dr. Patterson, through Marvin Cox, informed us that we could take any course taught by Dr. Trent outside of the school and then transfer them in. We were never told there was a time cap on this. We were then further informed that Dr. Trent would not be teaching graduate courses anymore. It was explained to us that Dr. Trent was really more of a researcher and that he had been switched to the Doctoral program were his expertise would be of greater value and make more sense.

The following semester as per what we were told, Dr. Trent was not teaching any of the classes we had left to take in our Graduate program. So we all relaxed and felt better. Now, this semester we are finding out that Dr. Trent is back in the Graduate program and that we cannot take these courses taught by him, outside of the school and transfer them.

My experience with Dr. Trent was so horrendous, that I will never ever take another class with him because of his strong judgmental attitude and failure to accept solid evidence contrary to his beliefs about quiz questions. And from talking to these other students, this is pretty much how they feel, unless they can be assured that Dr. Trent will be less judgmental and more objective. In fact, I have learned that at least one these other students has transferred schools in part because of him and the other one, is missing in action, I presume has left the school as well.

I realize this is not a very nice to way to speak about a fellow human being and in this case, instructor. And I am sure that as a person, he is a very knowledgeable and nice man. But the truth is that some people are better teachers than preachers. And some people are better preachers than teachers. And teaching graduate level courses does not seem to be his forte. He is a wonderful researcher, as I understand it.

I think if you go back through Marvin Cox's emails from January 2003 to April 2003, you will see numerous emails concerning this matter and even some CC'd to Dr. Patterson on this issue. These emails will be from myself as well as other students. And I also believe that if you go back to any emails to counselors concerning Dr. Trent, you will see years of issues and complaints about him.

At this point in my education, there is no way I could transfer to another school as I would loose too many credits and it would cost me even more money to complete my degree. I am already drowning in debt to go to school and could not handle another $20,000 added to that bill because I had to change schools. That seems a very expensive endeavor for any person to endure because of one professor. Let alone, if I am contemplating doing this, how many other students who do not have financial problems are willing to do it. This seems a rather expensive loss for your school as well.

Had I and the other students not been told that Dr. Trent would no longer be an issue, we would not be concerned today. We would have either transferred or found a way to get these course from another school and transfer them before the end of our first semester. But now we feel duped and lied to.

I do not know how you intend to handle this situation. But it is surely not fair to us students who are working so hard and were promised not to worry about taking courses with Dr. Trent, to now have to be put back in this situation. I have sent along this correspondence to the Federal Education Department to ask them for suggestions.

Please do not get me wrong, I do enjoy going to your school and have found it quite refreshing. It is wrong that we were lied to about Dr. Trent. Please look into this issue seriously. I believe you will find years of complaints and issues with Dr. Trent, which will support putting him to work in an area where his expertise will be appreciated and useful.

Best regards,


Joan T. Kloth



Ms. Joan Kloth
320 North George's Hill Road
Southbury CT 06488

Dear Ms. Kloth,

In response to your request today, I am send the statement below which is an excerpt from the Appeals committee letter.

"The Southern Christian University Appeals Committee met May 17, 2004, to consider your appeal dated May 7, 2004, with supporting documentation provided May 9, 2004.

The committee reviewed your specific requests; namely,

1.    Request to make an exception to the following policy as taken from the catalog which is available online at www.southernchristian.edu:

"Because of SCU's distinctive curriculum, all credits transferred in        and posted on an academic record will be agreed upon before a student finishes the first semester of work."

The course you have identified, PS7340 Human Sexuality from Capella University, has been reviewed by the Academic Department, and is acceptable for your degree program.  The committee will make a one-time exception to the published policy and allow you to take PS7340 Human Sexuality from Capella University and transfer the credit to Southern Christian University."


Sincerely,
S. Douglas Patterson
Vice President of Academic Affairs



**EXHIBIT**

**G**

Dear Ms. Alford:

I have been complaining for years to the Dr. Perry and anyone else that would listen that I could not find a clinical site. I have spent over 2 years making 100's of correspondence contacts for clinical training, including moving my daughter and I from CT to Delaware part-time. We travel between CT and Delaware on a weekly basis to find me a clinical site. I am now over a year behind in graduating. I have completed all of my courses except for my clinical training pulling straight A's for 99% of my classes. I can no longer afford to continue paying for a degree that I cannot get because I cannot get clinical training.

Your appeals committee is not going to make Dr. Perry find me a clinical site. And at this point, it would have to be a paying site as I can no longer afford to be out of work. My husband and I only budgeted for me to be in school for at most 2 and a 1/2 years. I am now going on three plus years. What do you honestly thing the Appeals Committee is going to do. As I understand it, they are just to resolve disputes about grades or other stuff, not about a student who cannot finish her degree because she cannot find a site to do her clinical training from.

You can consider this a formal complaint to the Appeals Committee.

Regards,

Joan T. Kloth

In a message dated 8/12/2005 10:43:04 A.M. Eastern Standard Time, balford@graceba.net writes:

Ms. Kloth,

I am working with the Appeals Committee of Southern Christian University (SCU). The Committee was copied on correspondence dated August 8th, by you to Dr. Jack Allen of the Southern Association of Colleges and Schools.

If it is your intention to have the Appeals Committee take action on your complaint, please follow the procedure made available to SCU students through the appeals process (reference the SCU Catalog.) The easiest way to file an appeal at SCU is through the on-line process. It is located on the SCU website, "Student Resources" tab, at the bottom of that page—"Appeals and Grievance Form."

If you have any questions about the form or the process, please feel free to contact me at this e-mail address: balford@graceba.net.

Barbara Alford


Dear Ms. Balford:
As I now live between Delaware and CT, going to AL would be out of the question both financially and as a mother. We will have to schedule a telephone conversation and I will need a written transcript of this conversation after it is completed. It is best to contact me in the Morning after 9am. Please let me know what day so I can make arrangements to be available. You will also need to contact me by mobile phone at 203-770-0318.
Regards,
Joani Kloth

In a message dated 8/19/05 7:42:27 PM, balford@graceba.net write

Mrs. Kloth—the Appeals Committee would like to schedule a hearing on your appeal. Although it is not required for students to speak with the Committee, they are invited to do so if they choose. If this is your preference, you are invited to meet with us in person in Montgomery, or we will arrange a telephone connection for you.

Please provide us with several (at least three) days and times that would be convenient for you to participate. We will crosscheck these with the Committee members to see when we will be able to get the group together. Send your selections to me via return e-mail to balford@graceba.net

We would like to schedule the meeting for the mid- to latter-part of next week. However, if this is not a good time for you, please suggest an alternate schedule.

Barbara Alford



In a message dated 8/26/05 3:36:56 PM, balford@graceba.net writes:

Mrs. Kloth—The Southern Christian University Appeals Committee met on August 24th and voted to deny your request that the University assume the costs of your student loan and potential wages for the past three years.  You will receive reaffirmation of this decision via mail, to the address on file in our official records (320 North George's Hill Road, Southbury, CT  06488.)

The letter informs appellants of the next and final level of appeal available to them at the University.  However, since you indicated during Wednesday's meeting that you intend to rebut statements made during the session, I have excerpted that portion of the letter for you, below:

From the SCU Catalog: "If the Appellant disagrees with the decision of the PRT Appeals Committee, then he or she may appeal the decision to the SCU Executive Leadership Team.  The Appeal shall be submitted in writing, within fifteen (15) calendar days of receipt of the PRT Appeals Committee decision, indicating why the Appellant disagrees with the decision.  The written Appeal shall be sent to the Executive Leadership Team in one of the following manners:
     By email (preferred) to:  JOHNWHITE@SOUTHERNCHRISTIAN.EDU

     By fax:  334.387.3878 – to the attention of Dr. John H. White

     By U.S. Postal Service or hand delivery:
          Dr. John H. White
          Southern Christian University
          1200 Taylor Road
          Montgomery, AL  36117-3553"

In addition, you had requested a transcript of the session.  The earliest that the transcription service will be able to take the taped copy will be Monday, August 29th, and they have indicated that the work will take approximately one week.  While we cannot control their timetable, we assure you that your copy will be in the mail to you within one day of the receipt of the printed transcript by SCU.  And invoice for the cost of your copy will be included in the mailing.

Barbara Alford, Ed.D.



Formal Complaint:

From: Joan T. Kloth
        320 North George's Hill Road
        Southbury, CT 06488
        203-267-7801 home
        203-770-0318 cell

Against: Southern Christian University
        1200 Taylor Ave
        Montgomery, AL 36117-3553
        800-351-4040

SCU failed to provide a complete graduate education despite repeated requests for assistance to help me find a clinical training site while engaging in religious discrimination. I am Jewish while the school is Christian. And though they stated they would never hold this against me, once I made it clear that I did not believe in the over-zealous attitudes of some of their students and professors, I began to be singled out along with several other students who were denied or over charged for their graduations.

The problem began with my repeated issues in finding a clinical training site. The school states that it is the student's responsibility to find a clinical training site. I have spent over 2.5 years making hundreds of contacts for a clinical training site, including having to move and live part-time in Delaware to try to find a clinical training site. Once in Delaware, I found the truth about why no one would allow me to do my clinical training with them. It was because my school refused to create a personal rapport other than by email and this was limited at that. The school will claim that they got me two clinical sites. Yet, they will not tell me the names of them. What they did was after I reported them several times to the Certification Board of Southern Association of Colleges and Schools Commission on Colleges, they grudgingly called two places on the lists of contacts that I had created. The first incident of this was with Dr. Perry who told me to contact Robin. I contacted her at least three times. But she never returned my contacts. I informed Dr. Perry of this who contacted her again and then instructed me to try to reach her again. When I finally got in touch with her, she told me that she had no opening for clinical students and that besides that she does not take students from colleges outside of Connecticut. I then continued to contact more people, including judges, attorneys, daycares, churches, temples, physicians and so on. When I got to about 100 contacts, I then reported them again to SACSCOC. This time Dr. John White contacted me for my list. He made one call to a head start program and told me to call them. I called them no less than three times but they never returned my calls. I informed Dr. White of this and I never heard from him again about it.

I have since filed for an appeals hearing through the school. I requested that they pay back the $58,000 for the student loans I incurred for the degree through their school that I am unable to obtain because I could not get a clinical training site. Neither Dr. Perry or Dr. White were present at the teleconferenced Appeal Hearing. The hearing members consisted entirely by employees of SCU. They read off commentaries from Dr. Perry and Dr. White. When I asked

for a copy of their statements, the school sent me a copy of the transcripts of the session instead and tried to charge me $80. Obviously, they were not going to find in my favor or even assist me in getting my degree any longer.

In addition, the school is now harassing the one person who tried to help me out with my clinical training. She volunteered to temporarily supervise me on the few private clients who offered to be guinea pigs so that I could at least have someone to practice my clinical skills upon. She did this out of the goodness of her heart because she felt so bad about this supposedly Christian school who was refusing to help me complete my degree.

At this point I have $58,000 in student loans for a degree that I can never complete because of my school. In addition, even if I found a site today to do my training, the school has drained us dry by forcing me to extend my education an extra year while I begged, crawled and did every thing I could to find a clinical training site. As well, the school would refuse to continue to educate me anyway because I have had to report them so many times, including to the Department of Education. As for transferring to another school, I have completed all of my classes except for the clinical training. I have a GPA of 3.9. But to transfer, I would loose everything because you are not allowed to transfer more than 9 to 12 credits. This would amount to starting all over again, loosing another 3 years and financially sinking us even further for classes and grades that I have already completed.

This has become a serious financial hardship and emotional strain on my family and I. I wasted 3 years going to school full-time for a degree that I cannot get. During those 3 years, I could have been establishing myself in the job market instead of incurring a $58,000 student loan debt that I cannot pay back for an degree I cannot receive.

Please help to make this right.
Regards,
Joan T. Kloth and her family



Joan T. Kloth
320 North George's Hill Road
Southbury, CT 06488
203-267-7801 home
203-770-0318 cell

July 20, 2005

SACSCOC
Alabama

Dear Mr. Jack Allen:

I have been writing to you for quite some time about my clinical training issue with SCU. I am now on my last semester of classes this summer and still have been unable to find a site. I have even gone as far as to move my daughter and I to Delaware part-time to try to find a site, which has also not panned out.

What I found out from one site here in Delaware is that because my school has no relationship or rapport with them, they cannot trust them and will not put their clients or facility at risk. That was just one of the commentaries I got.

This failure to assist me in making sure I found a clinical site is analogous to failure to provide me with a complete education. In fact, all other schools that I have contacted with this type of program told me that they guaranteed and made sure their students found a site to do their clinical work from. Because of this, I have had to file a case with the Ombudsmen's office in the Federal Department of Education.

It is now your job to make sure that the school cannot do this to anyone else ever again. I am now $58,000 in the whole in student loans that I cannot use. To transfer them, I would loose all but 9 to 18 credits of the 60 I have accumulated so far. In affect, I would be transferring to just start my education all over again. Something that I cannot afford to do financially, physically or emotionally.

Please do your part to prevent this from happening to another student ever again.

Regards,
Joan T. Kloth



| | NAME | CONTACT | PHONE NUMBER | REASON |
|---|---|---|---|---|
| 1. | Bell, Betsy (Elizabeth) | Private Practitioner | 203-264-8447 | No works from her home. |
| 2. | Bellotti, Michael | Private Practioner | 203-264-1661 | No, small practice |
| 3. | Brockett, Daniel | Private Practitioner | 203-264-3050 | No, small practice |
| 4. | Catholic Family Services Waterbury | James Osborn, Clinical Director | 203-755-1196 | Left Messages (LMs) |
| 5. | Central Naugatuck Valley Help | | 203-256-8984 x108 | LMs |
| 6. | Child & Adolescent Services | Bill Mannle, Coordinator | 203-634-7073 | LMs |
| 7. | Child Guidance Clinic | Christine Dowser | 203-756-7287 | LMs |
| 8. | Children's Home of Cromwell | Judy Gardner | 860-635-6010 x316 | No room, too late for this year and possibly next year |
| 9. | CMHA/Worth Program of Waterbury | Mark Johnson or Pam Pratt | 203-596-9724 Mark or 860-224-8192 | No liability or does not accept my schooling, claimed I was at a non-accredited school |
| 10. | Community Health Center | Sally | 860-632-2201 | No, MSW's only, told them about training, said No way. |
| 11. | Connecticut Valley Hospital | HR department | 860-262-5896 | LMs |
| 12. | Connection In-Patient (Rehab) | Lynn Spencer | 860-343-5505 | LMs |
| 13. | Court Support Services | Deb C | 860-721-2100 | No response, left several messages |
| 14. | Davidow, Kenneth | Private Practitioner | 203-264-1150 | No. |
| 15. | Department of Children and Family Services | Romelia Sharpe | 860-560-5021,860-550-6418, 860-550-6693 | Only take State Schools |
| 16. | Family Counseling Center of Newtown | Terry Balckmere | 203-426-8103 | No, not taking students at the moment |
| 17. | Family Intervention in Waterbury | | 203-753-2153 | LMs |
| 18. | Forensic Laboratory in Middletown/Meriden | Forensic Director | 860-262-5499 | Referred to Leone |

| 19. | Forensic Laboratory in Middletown/Meriden | William Boylan | 860-262-6339 | No. |
|---|---|---|---|---|
| 20. | Forensic Laboratory in Middletown/Meriden | Dr. Dean Leone | 860-262-5461 | No, forwarded my stuff to Shawn, never heard from him/her |
| 21. | Gray, Jeanne | Private Practitioner | 203-266-4712 | LMs |
| 22. | Greschen, Karen | Private Practitioner | 860-347-3466 | Left several messages, Never returned my last phone message |
| 23. | Hart, Sean | Private Practitioner | 203-262-5453 | No |
| 24. | Huges, Gail | Private Practioner | 203-263-4475 | LMs |
| 25. | Jewish Community Center of Western Connecticut | Debbie Horowtiz | 203-267-3177 | No programs |
| 26. | Kensington Green | Pattie Happy | 203-267-7100 | No counselors |
| 27. | Ledder, Robert W. | Private Practitioner | 860-826-3366 | LMs, and e-mailed |
| 28. | MCCA of Middlebury | Maureen Bigs | 203-598-0828, 203-792-4515x121 | LMs |
| 29. | Middlebury Youth and Family Services | Pat | 203-748-1441 | No longer taking students |
| 30. | Middlesex Hospital/Mental Health Center | Terri Depetro | 860-344-6000 | No couples, no groups, only LPC's |
| 31. | Mid-State Behavioral Health | Barbara Gingreco | 203-238-1184 | LMs |
| 32. | Ohanesian, Paul G. | Private Practitioner | 860-827-1375 | LMs |
| 33. | Patlikh, Asha | Private Practioner | 860-635-6010 | LMs, and e-mailed |
| 34. | Rushford (Rehab) In & Out Patient | Lori | 860-346-0300, 203-238-6892 | No |
| 35. | Rushford Adult Services | Barbara Bugella | 203-634-7415 | LMs |
| 36. | Safe Haven of Southbury | Peggy Pannagrossi | 203-575-0388 | LMs |
| 37. | St. Francis Behavioral Care | | 860-342-0480 | No longer in Portland, CT |
| 38. | St. Mary's Hospital | Diane Santos | 203-709-6219 | Only MSW's available, refused to do training. |
| 39. | Waterbury Family Services | Doreen Butner and Jason, LMFT | 203-756-8317 | No longer doing it |
| 40. | Waterbury Hospital | Sandy Lombardi | 203-573-6017 | LMs, sent me to Jean Horan as |

| | | | | well |
|---|---|---|---|---|
| 41. | Waterbury Hospital Behavioral Health Services | Jean Horan | 203-573-7246 | No return call about internship |
| 42. | Waterbury Youth and Family Services | Maggie | 203-573-0264 | No, Dave only one and he is no longer doing it? |
| 43. | Wheeler | Bill Kain, Ken Bangs, Elizabeth Cannata all contacts for different programs | 860-793-3567, 860-793-3816 | Left Messages (LMs) |
| 44. | 20 Churches/Temples in the Southbury, Woodbury, Oxford, Newtown areas | Sent letters, e-mails, and phoned | See phone book | No response from any or they are not interested or they have no one to oversee me. |
| 45. | 33 Attorneys/Family Courts/Judges from CT to Westchester NY and even into NJ | Sent Letters, e-mails and phoned | Documented on another list as there are far too many to reprint | No response or not interested. |
| 46. | Jewish Family Counseling Center in Wilmington, DE | Jean? | E-mailed and went for interview | Not interested because my school refuses to create a personal rapport with them other than by e-mail. |
| 47. | Counseling Center on Main Street, Newark DE. | | Walked In | Not interested. |
| 48. | DE Division of Services for Children, Youth and Their families, Psychiatric social Worker II | | Online Application and Mailed | No response except that I scored 80% on their review of qualifications. |
| 49. | DE Department of Health and Human Services, Youth Rehabilitation Counselor | | Online Application and Mailed | No response except that I scored 80% on their review of qualifications. |
| 50. | DE Department of Health and Human Services, Family Crisis Therapist | | Online Application and Mailed | No response except that I scored 80% on their review of qualifications. |

| | | | | |
|---|---|---|---|---|
| 51. | Representative Nancy Johnson, Hartford, CT | Nancy | E-mailed/Faxed Letter | No response |
| 52. | Senator Dodd, Hartford, CT | Senator Dodd | E-mailed/Faxed | No response |
| 53. | Senator Lieberman, Hartford, CT | Senator Lieberman | E-mailed/Faxed | No response |
| 54. | Connecticut Pain Care, Bethel, CT | Dr. Kloth, Dr. Levi, Dr. Boolbol | Faxed/Mailed | No response |
| 55. | Attorney Potash, New Haven County Attn. | | Faxed/Mailed | No response |
| 56. | Attorney Niebecki, New Haven County Attn. | | Faxed/Mailed | No response |
| 57. | Southbury Social Services | Sandy | Faxed/Mailed | No response |
| 58. | Board of Education, Region 15, Southbury, CT | Dr. Sippy | Faxed/Mailed | No response |
| 59. | District Attorney Jeanine Pirro, Westchester, NY | DA Pirro | Faxed/Mailed | No response |
| 60. | Honorable Joan Cooney, Hartford, CT | Judge Cooney | Faxed/Mailed | No response |
| 61. | Honorable David Klein, Hartford, CT | Judge Klein | Faxed/Mailed | No Response |
| 62. | CDM, Norwalk, CT | Mary and Walter Marcus | Faxed/Mailed | No Response |
| 63. | State's Attorney David Cohen, Hartford, CT | SA David Cohen | Faxed/Mailed | No Response |
| 64. | Honorable Judge Gruendel, CT | Judge Gruendel | Faxed/Mailed | No Response |
| 65. | Honorable Frank Frorgeone, CT | Judge Frorgeone | Faxed/Mailed | No Response |
| 66. | State's Attorney John Connelly | SA John Connelly | Faxed/Mailed | No Response |
| 67. | Honorable Sandra Edlitz, CT | Judge Edlitz | Faxed/Mailed | No Response |
| 68. | Honorable Samuel Walker, Hartford, CT | Judge Walker | Faxed/Mailed | No Response |
| 69. | Honorable Nilda Morales Horowitz | Judge Horowitz | Faxed/Mailed | No Response |
| 70. | Honorable Linda Jamieson | Judge Jamieson | Faxed/Mailed | No Response |
| 71. | Mary Dunn, Newtown, CT Prison | Mary | Faxed/Mailed | Not able to assist me |
| 72. | Oga Yatzus, Newark, DE area | Oga | Phoned/Faxed | Not able to assist me |

| | | | | |
|---|---|---|---|---|
| 73. | Steve Grant, Director of Court Family Services | Steve | Faxed/Mailed | Spoke to many times, but refused to assist me |
| 74. | State's Attorney Walter D. Flanagan | Attorney Flanagan | Faxed/Mailed | No Response |
| 75. | Toni Volchok, CT Prison HR | Toni | Faxed/Mailed | Unable to assist me |
| 76. | Attorney's Secor, Cassidy & McParland, New Haven County Family Law Attorneys | | Faxed/Mailed | No Response |
| 77. | Attorney's Palumbo, Palumbo and Carrington, New Haven County Family Law | | Faxed/Mailed | No Response |
| 78. | Attorneys Mellon, Hickey and Capuano, New Haven County Family Law | | Faxed/Mailed | No Response |
| 79. | Attorney Guiliano & Richardson, New Haven County Family Law | | Faxed/Mailed | No Response |
| 80. | Attorneys Gager, Emerson, Rickart, Bower and Scalzo | | Faxed/Mailed | No Response |
| 81. | Attorneys Cartoceti and Snearly, New Haven County Family Law | | Faxed/Mailed | No Response |
| 82. | Attorney Ferrucci, New Haven County Family Law | | Faxed/Mailed | No Response |
| 83. | Attorney Smith, New Haven County Family Law | | Faxed/Mailed | No Response |
| 84. | Attorney Hollon, New Haven County Family Law | | Faxed/Mailed | No Response |
| 85. | Attorney Ginzberg, New Haven County Family Law | | Faxed/Mailed | No Response |
| 86. | Attorney Crozier, New Haven County Family Law | | Faxed/Mailed | No Response |
| 87. | Attorney Cromik, New Haven County Family Law | | Faxed/Mailed | No Response |
| 88. | Federal Juvenile Facility, New Haven County | | Faxed/Mailed | No Response |

| 89. | Federal Juvenile Facility, Fairfield County | | Faxed/Mailed | No Response |
|---|---|---|---|---|
| 90. | Brewster Ice Arena Gym | Nicole | Face to Face/Faxed/Phone | No further communication |
| 91. | The Children's Center of Hamden, Hamden, CT | Julie Nestler | Faxed/Mailed/Phoned | No opening, only use CT state college students |
| 92. | Connecticut Valley Hospital, Addiction Services Division, Middletown, CT | William Boylin | Faxed/Mailed/Phoned | No openings, only use CT state college students |
| 93. | Family Re-Entry, Bridgeport and Norwalk Offices | Steve Lanza | Faxed/Mailed/Phoned | No openings, only use CT state college students |
| 94. | Fairfield Community Services, Fairfield, CT | Cornelia Luzzi | Faxed/Mailed/Phoned | No openings, only use CT state college students |
| 95. | Fairfield University Internships | | | Only open to Fairfield U. students |
| 96. | Halle-Brooke Behavorioal Health Services | Christine Walker | Faxed/Mailed/Phoned | No openings, only use CT state college students |
| 97. | Milford Youth & Family Services, Milford, CT | Lisa Diamond | Faxed/Mailed/Phoned | No response |
| 98. | Naugatuck Youth & Family Services | Jane Lobdell | Faxed/Mailed/Phoned | No openings, only use CT state college students |
| 99. | Stanford Counseling Center, Stamford, CT | William Matthews | Faxed/Mailed/Phoned | No response |
| 100 | Stafford Family Services, Stafford Springs, CT | Carol Thorren | Faxed/Mailed | No response |
| 101 | Statford Community Services, Stratford, CT | Denise Parent | Faxed/Mailed | No response |
| 102 | United Community and Family Services, Norwich, CT | Carol Thompson | Faxed/Mailed | No response |
| 103 | Westbrook Youth and Family Services, Westbrook, CT | Jonathan Dean | Faxed/Mailed/Phoned | No openings, only use CT state college students |
| 104 | Wheeler Clinic, Mental Health Outpatient | Jill Cristo | Faxed/Mailed/Phoned | No openings, only use CT state college |

| | Services, | | | students |
|---|---|---|---|---|
| 105 | Central Connecticut State University | Ralph Cohen | Phoned | No openings, only use CT state college students, suggested I have only one recourse to sue my school as it is mandatory that a school assist a student with finding a clinical site as they are difficult to get |
| 106 | State of CT, Judicial Volunteer/Intern Program | | Applied via State application process | No response |
| 107 | Flyers and Promotional information put up at Apartment complex in DE | | | No responses |
| 108 | The Pond Ice Arena, Newark, DE | Dan Kuhns | Spoke with | Not ready to impliment any programs yet. |
| 109 | Paradigm Fitness Center, Newark, DE | Rose and Glynn Willard | Letter | Difficult to impliment at this time |
| 110 | Champions Ice Rink, Cromwell, CT | Jean | Spoke with | Already have someone and they are not doing much themselves |
| 111 | Child, Inc. Wilmington, DE | Connie L. Futty, Human Resources Administrator | Applied via advertisement with resume | Gave spot to another person from a state school |

LMs = Left Messages



**EXHIBIT**

## Southern Christian University Grades

|  | Semester | Course No. | Class | Grade | Points |
|---|---|---|---|---|---|
| 1 | Spring 2003 | FT6300 A | Ethics and Professional Identity | A | 12 |
| 2 | Spring 2003 | FT6311 A | Theory of Marriage and Family Therapy | A- | 11.7 |
| 3 | Summer 2003 | FT6310 A | Theories of Counseling & Psycotherapy | B | 9.9 |
| 4 | Summer 2003 | FT6322 A | Theories of Personality Development | A | 12 |
| 5 | Summer 2003 | FT6326 A | Social and Multicultural diversity | B+ | 11.1 |
| 6 | Fall 2003 | FT7320 A | Human Development | B- | 9 |
| 7 | Fall 2003 | FT7323 A | Marriage and Family Development | A | 12 |
| 8 | Fall 2003 | FT7331 A | Marital and Family Systems | A- | 11.7 |
| 9 | Spring 2004 | FT7336 A | Basic Counseling Techniques/Helping Relationships | A | 12 |
| 10 | Spring 2004 | FT7340 A | Assessment of Individuals and Families | A | 12 |
| 11 | Spring 2004 | FT7355 A | Psychopathology and Psychopharmacology | A | 12 |
| 12 | Summer 2004 | FT7306 A | Community and Social Services | A | 12 |
| 13 | Summer 2004 | FT7332 A | Counseling for Abusive Relationships | A | 12 |
| 14 | Fall 2004 | FT7330 A | Inerpersonal and Family Dynamics | A | 12 |
| 15 | Fall 2004 | FT7370 A | MFT Practicum | P | 0 |
| 16 | Spring 2005 | FT7371 A | MFT Clinical Training I | P | 0 |
| 17 | Spring 2005 | Capella U | Human Sexuality | A | 12 |
| 18 | Summer 2005 | FT7335 A | Advanced Therapy | A | 12 |
| 19 | Summer 2005 | RS6339 A | Research and Evaluation | A | 12 |
|  | Total Points Earned |  |  |  | 197.4 |
|  | Average Points |  |  |  | 11.61176471 |
|  | **Grade Point Average (GPA)** |  |  |  | **3.9** |



# Southern Christian University

## Student Academic Evaluation

Joan T. Kloth
320 North George's Hill Road
Southbury CT 06488

Student ID: 000088695   10/25/2005
Home Phone  203/267-7801
Work Phone  203/770-0318
putzangel@aol.com

Services

Degree Program: M.A.  / 9/ 1
Master of Arts
Marriage and Family Therapy
IH:60 hour program
School of Leadership and Human

REQUIREMENTS:

COURSES APPLIED:

1  FT 6300   3.00  Sem Hrs
   Ethics and Professional Identity

MONFT 6300 A
Spring 2003                    APPLIED
 3.00 Sem Hrs A
Ethics and Professional Identity

2  FT 7306   3.00  Sem Hrs
   Community and Social Systems

MONFT 7306 A
Summer 2004                    APPLIED
 3.00 Sem Hrs A
Community and Social Systems

3  FT 6310   3.00  Sem Hrs
   Theories of Counseling and
   Psychotherapy

MONFT 6310 A
Summer 2003                    APPLIED
 3.00 Sem Hrs B-
Theories of Counseling and
Psychotherapy

4  FT 6311   3.00  Sem Hrs
   Theories of Marriage and Family
   Therapy

MONFT 6311 A
Spring 2003                    APPLIED
 3.00 Sem Hrs A-
Theories of Marriage and Family
Therapy

5  FT 7320   3.00  Sem Hrs
   Human Development

MONFT 7320 A
Fall   2003                    APPLIED
 3.00 Sem Hrs B
Human Development

6  FT 7321   3.00  Sem Hrs
SUBSTITUTED
   Human Sexual Development
TRANSFERRED

PSY7340

Winter 2005

<pre>
                                        5.00 Qtr Hrs
                                        PSY7340 Human Sexuality

  7  FT 6322   3.00  Sem Hrs          MONFT 6322 A
     Theories of Personality          Summer 2003              APPLIED
     Development                        3.00 Sem Hrs A
                                        Theories of Personality
                                        Development

  8  FT 7323   3.00  Sem Hrs          MONFT 7323 A
     Marriage and Family Development  Fall   2003              APPLIED
                                        3.00 Sem Hrs A
                                        Marriage and Family Development

  9  FT 6326   3.00  Sem Hrs          MONFT 6326 A
     Social and Multicultural Diversity Summer 2003            APPLIED
                                        3.00 Sem Hrs B+
                                        Social and Multicultural Diversity

 10  FT 7336   3.00  Sem Hrs          MONFT 7336 A
     Basic Counseling Techniques /    Spring 2004              APPLIED
     Helping Relationships              3.00 Sem Hrs A
                                        Basic Counseling Techniques /
                                        Helping Relationships

 11  FT 7330   3.00  Sem Hrs          MONFT 7330 A
     Interpersonal and Family Dynamics Fall   2004             APPLIED
                                        3.00 Sem Hrs A
                                        Interpersonal and Family Dynamics

 12  FT 7331   3.00  Sem Hrs          MONFT 7331 A
     Marital and Family Systems       Fall   2003              APPLIED
                                        3.00 Sem Hrs A-
                                        Marital and Family Systems

 13  FT 7332   3.00  Sem Hrs          MONFT 7332 A
     Counseling for Abusive           Summer 2004              APPLIED
     Relationships                      3.00 Sem Hrs A
                                        Counseling for Abusive
                                        Relationships

 14  FT 7335   3.00  Sem Hrs          MONFT 7335 A
     Advanced Therapy                 Summer 2005              APPLIED
     * CAPSTONE COURSE                  3.00 Sem Hrs A
                                        Advanced Therapy

 15  RS 6339   3.00  Sem Hrs          MONRS 6339 A
     Research and Evaluation          Summer 2005              APPLIED
                                        3.00 Sem Hrs A
                                        Research and Evaluation

 16  FT 7340   3.00  Sem Hrs          MONFT 7340 A
     Assessment of Individuals and    Spring 2004              APPLIED
     Families                           3.00 Sem Hrs A
                                        Assessment of Individuals and
                                        Families
</pre>

```
17   FT 7355    3.00   Sem Hrs          MONFT 7355 A
     Psychopathology and               Spring 2004                        APPLIED
     Psychopharmacology                 3.00 Sem Hrs A
                                       Psychopathology and
                                       Psychopharmacology

18   FT 7370    3.00   Sem Hrs          MONFT 7370 A
     MFT Practicum                     Fall   2004                        APPLIED
                                        3.00 Sem Hrs P
                                       MFT Practicum

19   FT 7371    3.00   Sem Hrs          MONFT 7371 A
     MFT Clinical Training I           Spring 2005                        APPLIED
                                        3.00 Sem Hrs P
                                       MFT Clinical Training I

20   FT 7372    3.00   Sem Hrs          Lack Course
     MFT Clinical Training II                                             LACKING
     * CAN NOT BE SUBSTITUTED FOR
```

======================================================================
CLASSES TAKEN AT SOUTHERN CHRISTIAN UNIVERSITY
--NOT APPLIED TO ABOVE; APPLIED TOWARD DEGREE-HOUR REQUIREMENTS:
```
                                        Term    Year GR      Hours

     MONFT 7321 A Human Sexual Development   Summer 2004 W     3.00 Sem
CURR
```
----------------------------------------------------------------------
---
```
                               Degree Program: M.A.  / 9/ 1
                               Master of Arts
                               Marriage and Family Therapy
                               IH:60 hour program
                               School of Leadership and Human
Services
          Hours are stated in Semester Hours
```

```
                    Requirements              Hours     Hours
                        and                  Toward    Required
                    Electives                Degree    At SCU
                              Requirements
                    19 of 20    Applied       57.33     54.00
                    0 of 20     Pending        0.00      0.00
                              Electives
                    0 of  0     Applied        0.00      0.00
                    0 of  0     Pending        0.00      0.00
                              Other Hours
                                Transferred    0.00
                    --------                ------    ------
                    19 of 20      TOTAL       57.33     54.00
                              For Graduation  60.00     51.00
                    ========                ======    ======
                    1 of 20    Lacking         2.67
```

Summary: Based on your evaluation, dated October 25th, 2005, upon the
         successful completion of all pending coursework you will need 2.67
         semester hours to complete your degree-hour requirements.  You lack

1 required course.

You are required to have 100 supervisory hours.  Presently you have
0 hours.  You lack 100 supervisory hours.  You are required to have
500 client contact hours.  Presently you have 0 hours.  You lack
500 client contact hours.

A Cumulative Grade Point Average of 3.00 is required for
graduation.  Your Cumulative Grade Point Average is    3.86.

*****************************************************************
ATTENTION COUNSELING STUDENTS: Dr. Wayne Perry may be contacted by
email at wayneperry@southernchristian.edu or by telephone at
1.800.351.4040, ext. 7535 or 334.387.7535.

*****************************************************************
ATTENTION GRADUATE COUNSELING STUDENTS: If you have completed 24
hours or more of required courses in your degree program, please
contact Dr. Wayne Perry by email (wayneperry@southernchristian.edu)
to discuss Practicum and Clinical Training courses.

*****************************************************************

LICENSURE AS A MARRIAGE AND FAMILY THERAPIST AS RELATED TO THE
MASTER OF ARTS IN MARRIAGE AND FAMILY THERAPY

To become a Licensed Marriage and Family Therapist (LMFT) in most
states, a candidate must present credentials to the appropriate
state board of examiners who will schedule an examination.
Southern Christian University makes no guarantees that a student
will attain licensure in a given state.  Additionally, it is the
student's responsibility, not the University's, to ensure that he
or she meets the licensure requirements for the state or states
that he or she intends to be licensed.  As such, students are
encouraged to contact the appropriate state LMFT board in their
home state or the states they plan to be licensed as soon as
possible to obtain all of the respective licensure information.

*****************************************************************
As stated in the Table of Contents of the Southern Christian
University Academic Catalog, the programs, policies, regulations,
curricula, fees, and other information as set forth in the catalog
are subject to change at any time at the discretion of Southern
Christian University.  Because of the possibility of change or
undetected error, important points of fact and interpretation
should be confirmed by the appropriate University official.

Advisor/Counselor
        Name : Steve A. Redding
    Telephone : 800/351-4040  ext. 7510
        e-mail : steveredding@southernchristian.edu



(Taken from Website, www.salliemae.com on March 18, 2006)

https://www.manageyourloans.com/MYL

SallieMae
PO BOX 9500
Wilkes-Barre, PA 18773
(888) 272-5543

JOAN T KLOTH
320 N GEORGE'S HILL
SOUTHBURY, CT 06488-2626

Dear JOAN KLOTH, 03/18/2006
Here is current information about your education loans:
PAYMENT INFORMATION (on the loans starred (*) below).
This payment summary reflects loans in repayment status only.

Monthly Payment Amount - $0.00
Next Payment Due Date - N/A
Outstanding Late Fees - $0.00
Outstanding Other Charges - $0.00
Total Amount Due by N/A - $0.00
Past Due Amount - $0.00
    (please pay immediately)

BALANCE INFORMATION
  Number of Loans - 2
  Principal Balance - $57,783.16
  Accrued Interest - $395.27
  Capitalized Interest - 36
  Outstanding Late Fees - $0.00
  Outstanding Other Charges - $0.00
  Total Balance - $58,178.43

Most loans have a variable interest rate. The current rates are listed below.

Payment History
The list below includes the last 5 payments posted to your account.
  DATE AMOUNT
  Not Applicable

Loan Information
The list below includes all the loans in your account with us. Loans marked with a starred (*) are
the loans referred to in this letter.

LOAN # PROGRAM STATUS FIRST DISB DATE ORIGINAL BAL/
CURRENT PRIN BAL INTEREST RATE

1-10 Consolidation Unemployment Defer 07/06/2005 $28,419.46/
$28,641.45 2.875%

1-11 Consolidation Unemployment Defer 07/06/2005 $29,002.34/
$29,141.71 2.875%



Subj: Re: Southern Christian University
Date: Friday, August 26, 2005 10:32:52 PM
From: Putzangel
To: balford@graceba.net

And you can let the Appeals Committee know that they had to be kidding if they really thought I expected them to find in my favor as it would be a financial disaster and set a precedence. That is why I will probably be forced to file a lawsuit to make sure this school is shut down for good. I was only going through the motions so I could say I did everything that I was supposed to do. Now, they just screwed themselves and the school because in attorney's fees alone it will cost them more than the damages they could have assumed during the appeals meetings. Good luck. You will need it as I have all the evidence I need in emails, classmate confessions, school records and legal government statements. They just might want to think twice about what they are going to do because I will make sure that I shut them down and they pay for all the damages I am incurring because of their failure to provide me with a complete education.
Joani

In a message dated 8/26/05 3:36:56 PM, balford@graceba.net writes:

Mrs. Kloth—The Southern Christian University Appeals Committee met on August 24th and voted to deny your request that the University assume the costs of your student loan and potential wages for the past three years. You will receive reaffirmation of this decision via mail, to the address on file in our official records (320 North George's Hill Road, Southbury, CT 06488.)

The letter informs appellants of the next and final level of appeal available to them at the University. However, since you indicated during Wednesday's meeting that you intend to rebut statements made during the session, I have excerpted that portion of the letter for you, below:

From the SCU Catalog: "If the Appellant disagrees with the decision of the PRT Appeals Committee, then he or she may appeal the decision to the SCU Executive Leadership Team. The Appeal shall be submitted in writing, within fifteen (15) calendar days of receipt of the PRT Appeals Committee decision, indicating why the Appellant disagrees with the decision. The written Appeal shall be sent to the Executive Leadership Team in one of the following manners:
    By email (preferred) to: JOHNWHITE@SOUTHERNCHRISTIAN.EDU

    By fax: 334.387.3878 – to the attention of Dr. John H. White

    By U.S. Postal Service or hand delivery:
        Dr. John H. White
        Southern Christian University
        1200 Taylor Road
        Montgomery, AL 36117-3553"

In addition, you had requested a transcript of the session. The earliest that the transcription service will be able to take the taped copy will be Monday, August 29th, and they have indicated that the work will take approximately one week. While we cannot control their timetable, we assure you that your copy will be in the mail to you within one day of the receipt of the printed transcript by SCU. And invoice for the cost of your copy will be included in the mailing.

Barbara Alford, Ed.D.



Letter from Dr. Tyler Philpott dated April 12, 2000



Letter from Dr. Spector dated September 27, 2000

JS 44 (Rev. 11/04)

# CIVIL COVER SHEET

06 - 244

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

Kloth, Joan J.

**DEFENDANTS**

Southern Christian University

Montgomery, AL

**(b)** County of Residence of First Listed Plaintiff _____

(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant _____

(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

Attorneys (If Known)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☒ 1 U.S. Government Plaintiff

☐ 2 U.S. Government Defendant

☐ 3 Federal Question (U.S. Government Not a Party)

☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)

(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☐ 2 | ☒ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | **LABOR** | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Act | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☒ 190 Other Contract | Product Liability | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | ☐ 730 Labor/Mgmt.Reporting | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | ☐ 791 Empl. Ret. Inc. | or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | Security Act | ☐ 871 IRS—Third Party | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land | Accommodations | | 26 USC 7609 | Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | | | ☐ 900Appeal of Fee Determination |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | | | Under Equal Access |
| | Employment | | | to Justice |
| | ☐ 446 Amer. w/Disabilities - | | | ☐ 950 Constitutionality of |
| | Other | | | State Statutes |
| | ☐ 440 Other Civil Rights | | | |

## V. ORIGIN (Place an "X" in One Box Only)

☒ 1 Original Proceeding

☐ 2 Removed from State Court

☐ 3 Remanded from Appellate Court

☐ 4 Reinstated or Reopened

☐ 5 Transferred from another district (specify)

☐ 6 Multidistrict Litigation

☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):

Brief description of cause:

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $ 2,000,000
2 million dollars

CHECK YES only if demanded in complaint:

JURY DEMAND: ☐ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY

(See instructions):

JUDGE _____    DOCKET NUMBER _____

DATE 4-12-06

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**