IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| JOAN T. KLOTH, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| | ) Civ. No. 06-244-SLR |
| v. | ) |
| | ) |
| SOUTHERN CHRISTIAN | ) |
| UNIVERSITY, BOARD OF | ) |
| DIRECTORS, | ) |
| | ) |
| Defendants. | ) |

Joan T. Kloth, Southbury, Connecticut, Pro se Plaintiff.

Kevin W. Goldstein and Michael P. Migloire, of Stradley, Ronon, Stevens, and Young, LLP, Wilmington, Delaware. Counsel for Defendants.

**MEMORANDUM OPINION**

Dated: July 16, 2007
Wilmington, Delaware

*[signature]*
ROBINSON, Judge

## I. INTRODUCTION

On April 12, 2006, Joan T. Kloth ("plaintiff"), a pro se plaintiff, filed the present action against Southern Christian University ("SCU") and its Board of Directors ("the Board").[1] (D.I. 2) Plaintiff alleges that SCU and the Board (collectively, "defendants") breached an implied contract to provide plaintiff with a complete education. (Id. at 14) Plaintiff also alleges that defendants discriminated against her because of her non-Christian religion, presumably in violation of Title VII of the Federal Civil Rights Act of 1964. (Id. at 1) Plaintiff requests relief in the form of $2,058,000. (Id. at 14-15) This amount includes the reimbursement of court costs, reimbursement of plaintiff's student loans, loss of projected future income, and compensation for severe emotional damage. (Id.)

Plaintiff's original complaint was served upon defendants on July 28, 2006. (D.I. 6; D.I. 7) Pursuant to Fed. R. Civ. P. 12(a)(1)(A), defendants' answer to the original complaint was due on August 17, 2006; however, the court has not received an answer to the original complaint. On October 5, 2006, plaintiff filed a request for a default judgment on the ground that defendants never answered plaintiff's original complaint. (D.I. 8) On October 10, 2006, defendants submitted a notice of appearance. (D.I. 10) On October 20, 2006, defendants filed a motion to dismiss for lack of personal jurisdiction. (D.I.12) Also on October 20, 2006, plaintiff filed her amended complaint, in

---

[1]Southern Christian University has since been renamed "Regent University." For simplicity, the court will continue to refer to it as SCU.

which she clarified her request for relief.[2] (D.I. 11) Presently before the court are plaintiff's motion for default judgment (D.I. 8) and defendants' motion to dismiss for lack of personal jurisdiction. (D.I. 12) For the reasons that follow, the court will grant defendants' motion.[3]

## II. BACKGROUND

During April of 2000, plaintiff was diagnosed with severe visual problems, which were "difficult to treat." (D.I. 2 at 1) Facing the possibility of completely losing her eyesight, plaintiff decided to pursue a degree which would allow her to work from home. (Id.) SCU offered the curriculum necessary for plaintiff to complete a dual masters degree in Marriage and Family Therapy and Professional Counseling. (Id.) SCU also offered an option, called "distance learning," by which students could enroll full-time, taking all courses through use of the internet. (Id. at 2)

Plaintiff was advised by Marvin Cox ("Cox"), the Graduate Advisor for the School of Human Services, that it would take slightly over two years to complete the requirements needed for graduation, including 600 hours of clinical work broken down into 250 hours of individual counseling, 250 hours of couples/group counseling, and

---

[2]Specifically, plaintiff clarified that she was seeking to hold defendants liable for any and all student loans pertaining to this lawsuit in the amount of $58,000. (D.I. 11) Because plaintiff's amended complaint did not restate the facts, the court will cite instead to the original complaint.

[3]In light of the court's granting defendants' motion to dismiss for lack of personal jurisdiction, plaintiff's motion for default judgment is denied as moot. If service of process is insufficient to confer jurisdiction of the person, a defendant does not waive this defense by failing to raise it in a motion or pleading within the time required for answer, since the court has no power over the defendant. See Zelson v. Thomforde, 412 F.2d 56 (3d Cir. 1969).

2

100 hours of supervised counseling. (Id.) Cox told plaintiff that she would be able to graduate by June of 2005. (Id.) Plaintiff was also told that SCU would be certified by the Commission on Accreditation for Marriage and Family Therapy Education ("COAMFTE") before she graduated, a necessary requirement before Connecticut would recognize the degree.[4] (Id. at 2-3) Plaintiff was assured that her non-Christian religion would cause no problems with any SCU employees. (Id.) During this period of preliminary inquiries, which included multiple correspondences, plaintiff was never told that each student was required to find his or her own clinical training site or that it could be difficult to find a clinical training site. (Id. at 3) During January of 2002, plaintiff enrolled in SCU's distance learning program and began taking courses from her home in Connecticut. (Id.)

Plaintiff alleges that, during her first year of taking courses, fellow students and teachers began "disrespecting" her because she is not Christian. (Id. at 4) Plaintiff also asserts that she met two other students with experiences similar to her who claimed to be victims of religious discrimination. (Id.) Another then-current student at SCU allegedly told plaintiff that she was "disrespected for not being Christian" and told plaintiff about a former non-Christian student who filed a discrimination suit against SCU for overcharging of fees and services. (Id.)

During spring of 2003, plaintiff began seeking a training site where she could fulfill the clinical requirements needed prior to graduation. (Id.) Plaintiff applied to, and

---

[4]On July 18, 2003, plaintiff found that SCU did not intend to pursue COAMFTE certification. (D.I. 2 at 4) When plaintiff inquired as to why SCU no longer planned on becoming certified, she found that SCU had not even been extended candidacy for COAMFTE certification. (Id. at 13)

3

received rejections from, fifteen separate clinical training sites. (Id.) When plaintiff contacted SCU about her inability to find a clinical training site, she was told that it was each student's responsibility to find a clinical training site. (Id.) Plaintiff proceeded to apply to thirty additional clinical training sites, all of which rejected her application. (Id. at 5) Plaintiff again brought her continuing troubles in finding a clinical training site to the attention of SCU, and was offered no assistance. (Id.)

In December of 2003, plaintiff contacted the "Accreditation Agency; Commission on Colleges, Southern Association of Colleges and Schools" (the "Agency"), in regards to SCU's refusal to assist in her search for placement at a clinical training site. (Id.) Upon request from the Agency, SCU gave plaintiff the names of two possible clinical training sites where plaintiff could submit applications. (Id.) However, neither site accepted plaintiff's application and her repeated attempts to contact SCU for additional help were ignored. (Id.)

In the fall of 2004, plaintiff found a private counselor who agreed to supervise her clinical training hours without charge. (Id. at 8) However, this counselor could not provide plaintiff with any clients. (Id.) Plaintiff claims that she used every method at her disposal to obtain clients, however, could not find nearly enough to fulfill SCU's requirement of 600 total hours of clinical work before graduation. (Id.) During this time, plaintiff began searching in other states (including New York and New Jersey) for clinical training sites, but continued to receive rejections. (Id.)

On February 20, 2005, plaintiff moved to Delaware (after allegedly exhausting all available resources in Connecticut, New York, and New Jersey) to continue searching for a clinical training site. (Id. at 9-10) In Delaware, plaintiff continued to receive

4

rejections. (Id. at 10) The director of the Jewish Community Center, one of the clinical sites where plaintiff applied, said that the reason plaintiff has been unable to find a site was "the refusal of defendants to create a personal rapport [with potential clinical sites where plaintiff applied]" and "their arrogant attitude." (Id.)

While in Delaware, plaintiff completed the last of her non-clinical requirements, but still could not find a clinical training site to complete the clinical training hours that were necessary prerequisites to graduation. (Id. at 14) After earning a 3.9 grade point average and completing over one hundred applications to different clinical training sites, plaintiff withdrew from SCU because she was not able to complete her clinical hours. (Id. at 13-14) Plaintiff, confronted with student loans and no forthcoming degree, unsuccessfully requested that SCU assume her student loans. (Id. at 10-14) After SCU denied plaintiff's initial request, SCU and plaintiff conducted an "appeals hearing" via telephone which resulted in SCU's continuing refusal to assume any student loans. (Id. at 10)

Defendants base their motion to dismiss on the assertion that this court lacks personal jurisdiction. SCU's primary campus is in Montgomery, Alabama, and classes are also taught at another campus in Nashville, Tennessee. (D.I. 13 at 3) SCU never had any real or personal property in Delaware.[5] (Id.) SCU has no phone number, agent for service of process, or employee of any sort within Delaware. (Id.) Furthermore, SCU has not contracted with any Delaware companies or formed partnerships with Delaware companies, associations, or other educational institutions.

---

[5]Plaintiff does not contest any of the facts put forth by defendants in support of their motion to dismiss. (D.I. 19)

5

(Id. at 4) SCU has never sued or been sued in Delaware prior to this action. (Id.) Only one of SCU's eight hundred students has a last-known mailing address in Delaware. (Id.) Defendants allegedly have "never intentionally targeted any promotions or recruiting efforts specifically towards Delaware citizens." (Id.) Defendants also allege that they had no knowledge of plaintiff's residence in Delaware until they received plaintiff's complaint. (Id.)

The SCU website provides general public information, degree program descriptions, admissions, registry and financial aid information, student resources, an academic catalog, the academic calendar, and campus and on-line course [listings].[6] (Id. at 5) Defendants claim that the website is only "informational" and deny that it is "commercial." (Id.) Defendants also claim that "the information [from the website] is not intentionally directed to Delaware" and that "the website does not intentionally or knowingly direct the transacting of business to Delaware residents and citizens." (Id.)

## III. STANDARD OF REVIEW

Pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure, a court may dismiss a suit for lack of jurisdiction over the person. According to the United States Supreme Court, before a court may exercise personal jurisdiction over a defendant, there must be more than notice to the defendant and a constitutionally sufficient relationship between the defendant and the forum. There must also be a basis for the defendant's amenability to service of summons. Absent consent, this means there must be authorization for service of summons on the defendant. See Omni Capital

---

[6]The former Southern Christian University website, currently the Regent University Website, can still be accessed at http://www.southernchristian.edu.

6

Intern. Ltd. v. Rudolph Wolff & Co., 484 U.S. 97, 104 (1987). The principle pronounced above is traditionally described as a two-step analysis: first, whether there is amenability to service and, second, whether the exercise of jurisdiction offends the defendant's right to due process. Rule 4(e)(1) of the Federal Rules of Civil Procedure states that service of a summons may be effectuated "pursuant to the law of the state in which the district court is located." The Delaware long-arm statute, 10 Del. C. § 3104(c), has been construed broadly to confer jurisdiction to the maximum extent possible under the due process clause. See LaNuova D & B S.p.A. v. Bowe Co. Inc., 513 A.2d 764, 768 (Del. 1986).

However, since the Delaware Supreme Court has not determined that § 3104(c) is coextensive with federal due process, the court must determine whether the exercise of personal jurisdiction is compatible with both the specific requirements of the Delaware long-arm statute and with defendants' constitutional rights to due process. See Intel Corp. v. Silicon Storage Tech., Inc., 20 F. Supp. 2d 690, 694 (D. Del. 1998); see gen., Int'l Shoe Co. v. Washington, 326 U.S. 310 (1945).

Once a jurisdictional defense is raised, the burden is on the plaintiff to demonstrate with reasonable particularity that sufficient minimum contacts have occurred between the forum state and defendant to support jurisdiction.[7] See Provident National Bank v. California Federal Savings & Loan Assoc., 819 F.2d 434, 437 (3d Cir.

---

[7] The submissions of pro se litigants are to be construed liberally and held to less stringent standards than submissions of lawyers. If the court can reasonably read the submissions, it should do so despite failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or litigant's unfamiliarity with rule requirements. See Boag v. MacDougall, 454 U.S. 364 (1982).

1987). To meet this burden, the plaintiff must demonstrate either specific or general jurisdiction. Specific jurisdiction arises when the particular cause of action arose from the defendant's activities within the forum state. In contrast, general jurisdiction does not require that the defendant's connections be related to the particular cause of action, but that the defendant has continuous or systematic contacts with the forum state. See American Bio Medica Corp. v. Peninsula Drug Analysis Co., Inc., No. Civ. A. 99-218, 1999 WL 615175 (D. Del. Aug. 13, 1999).

The Delaware long arm statute permits the exercise of personal jurisdiction over a nonresident who, in person or through an agent:

> (1) Transacts any business or performs any character of work or service in the State;
> (2) Contracts to supply service or things in this State;
> (3) Causes tortious injury in the State by an act or omission in this State;
> (4) Causes tortious injury in the State or outside of the State by an act or omission outside the State if the person regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from services, or things used or consumed in the State;
> (5) Has an interest in, uses or possesses real property in the State; or
> (6) Contracts to insure or act as surety for, or on, any person, property, risk, contract, obligation or agreement located, executed or to be performed within the State at the time the contract is made, unless the parties otherwise provide in writing.

10 Del. C. § 3104(c). The above provisions have been construed "liberally so as to provide justification to the maximum extent possible" in order "to provide residents a means of redress against those not subject to personal service within the State." Boone v. Oy Partek Ab, 724 A.2d 1150, 1156-57 (Del. Super. 1997).

**IV. DISCUSSION**

The first step to determining whether the court has personal jurisdiction over

8

defendants is examining the sufficiency of service under Delaware's long-arm statute. Because SCU is not incorporated or organized under Delaware law, maintains no campus or other place of business in Delaware, holds no real property in Delaware, is not licensed to do business in Delaware, has no agent for service of process in Delaware, has no Delaware phone number, has no bank or brokerage account in Delaware, has no employees, representatives, or agents in Delaware, and has never before sued or been sued in a Delaware court, only §§ 3104(c)(1) or (c)(4) could possibly justify service under Delaware's long-arm statute. Section 3104(c)(1) allows for service of process based on specific jurisdiction, while §3104(c)(4) allows for service of process based on general jurisdiction. See Padcom, Inc. v. Netmotion Wireless, Inc., No. Civ. A. 03-983, 2004 WL 1192641, *4 (D. Del. May 24, 2004). The only "contacts" between defendants and the forum state of Delaware are the existence of SCU's website, plaintiff's temporary residence in Delaware while searching for a clinical training site, and one other SCU student's residence in Delaware.

### A. Specific Jurisdiction

Specific jurisdiction arises when a defendant has both purposefully directed its activities at residents of the forum state and the action arises from, or is directly related to, the defendant's actions within the forum state. See Burger King Corp. v. Radzewicz, 417 U.S. 462, 472 (1985). The Third Circuit Court of Appeals uses a "purposeful availment" test for deciding whether a defendant's internet website meets the Burger King test for specific jurisdiction. See Toys "R" Us, Inc. v. Step Two, S.A., 318 F.3d 446 (3d Cir. 2003). When a defendant's website is specifically designed to commercially

interact with the residents of a forum state, specific jurisdiction is proper because that defendant has "purposefully availed" itself of doing business with the forum state. Id. at 452. In the case at bar, the court finds no evidence that defendants "purposefully availed" themselves of doing business with Delaware citizens.

Defendants certainly could have foreseen that students from Delaware might choose to participate in the "distance learning" program. Also, defendants knew that the website could be accessed from Delaware. This foreseeability, however, does not mean that defendants purposefully directed their activities at residents of Delaware or "purposefully availed" themselves of doing business with Delaware citizens. See World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 295 (1980) (holding that, while an automobile retailer and wholesaler certainly foresaw the possibility that one of their vehicles could enter any other state and potentially become involved in an accident, a forum state with which the retailer had no prior contact could not exercise personal jurisdiction over the wholesaler or lawfully serve process). Like in World-Wide Volkswagen, the defendants in the case at bar did not purposefully avail themselves of doing business with residents of Delaware merely because they knew their website could be accessed by residents of any state.

Courts within the Third Circuit have traditionally required "something more" from defendants than the knowledge that their website could be viewed or that their product could be used in a forum state before considering whether specific jurisdiction is proper. See Desktop Technologies, Inc. v. Colorworks Reproduction & Design, Inc., No. Civ. A. 98-5029, 1999 WL 98572, *5 (E.D. Pa. Feb. 25, 1999) (ruling that registering someone

else's trademark as a domain name and posting a website on the internet is not evidence that the website was directed to any particular forum state). In Zippo Mfg. Co. v. Zippo Dot Com, Inc., the "something more" was that the defendant had sold passwords to approximately three thousand subscribers from the forum state of Pennsylvania and had contracted with internet service providers to "furnish its services to its customers in Pennsylvania." 192 F. Supp. 1119, 1125-28 (W.D. Pa. 1997). In the case at bar, no evidence before the court suggests that defendants purposefully availed themselves of doing business with Delaware citizens or targeted the contents of their website toward Delaware. Furthermore, the contents of the website are not sufficiently "commercial" for § 3104(c)(1) to allow for specific jurisdiction over defendants.

## B. General Jurisdiction

General jurisdiction may be exercised over a defendant whose contacts with the forum state are "continuous and substantial." See Merck v. Barr, 179 F. Supp. 2d 368, 374 (D. Del. 2002). However, the standard for contacts with a forum state to be considered "continuous and substantial" is a "high standard in practice." See Sears, Roebuck & Co. v. Sears plc and Sears Financial Services Limited, 744 F. Supp. 1297, 1304 (D. Del. 1990). Plaintiff's temporary residence in Delaware coupled with the Delaware residence of one additional SCU student is far from the continual or substantial contacts required for general jurisdiction. Typically, before consideration for general jurisdiction, the defendant must be engaged in longstanding business in the forum state such as marketing or shipping products, or performing services or maintaining one or more offices there- activities that are less extensive than that will not

11

qualify for general in personam jurisdiction. See gen. 4 Fed. Prac. & Proc. Civ.3d § 1067.5, n.6) (collection of cases from multiple jurisdictions demonstrating the high threshold that must be met before general jurisdiction is considered).

Despite the nonexistence of any United States Supreme Court or Third Circuit Court of Appeals decisions addressing the requirements needed for a website to establish general jurisdiction, district courts have held that the likelihood that general jurisdiction exists is "directly proportionate to the nature and quality of commercial activity that an entity conducts over the internet." Grutkowski v. Steamboat Lake Guides & Outfitters, Inc., No. Civ. A. 98-1453, 1998 WL 962042 (E.D. Pa. Dec. 28, 1998) (quoting Blackburn v. Walker Oriental Rug Galleries, Inc., 999 F.Supp. 636, 638 (E.D. Pa. 1998)). District courts have established three categories of internet contacts, each with its own standards governing the propriety of general jurisdiction based on those contacts. See Blackburn, 999 F. Supp. at 639. As explained in Blackburn,

> the first type of contact is when the defendant clearly does business over the internet. If the defendant enters into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the internet, personal jurisdiction is proper. The second type of contact occurs when a user can exchange information with the host computer. In these cases, the exercise of jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs on the website. The third type of contact involves the posting of information or advertisements on an internet website which is accessible to users in foreign jurisdictions. Personal jurisdiction is not exercised for this type of contact because a finding of jurisdiction . . . based on an internet site would mean that there would be nationwide (indeed worldwide) personal jurisdiction over anyone and everyone who establishes an internet website. Such nationwide jurisdiction is not consistent with personal jurisdiction case law.

Id. (citations and quotations omitted).

When determining which type of contact is established by a website, it is the

nature and quality of commercial activity that is relevant. Id. The SCU website provides general public information, degree program descriptions, admissions, registry and financial aid information, student resources, an academic catalog, the academic calendar, and campus and online courses. (D.I. 13 at 5) The SCU website is completely informational except for the part of the site which allows interested students to submit online applications to SCU; submitting an online application is arguably "commercial" because it could lead to a fiduciary relationship should the application be accepted and the potential student choose to enroll.

The court declines to find that the level of interactivity and the commercial nature of this one portion of the SCU site is sufficient to establish general jurisdiction in Delaware. The fact that a website allows for orders to be placed is not, by itself, sufficient commercial activity to establish general jurisdiction in the forum where the order is placed. See Molnlycke Health Care AB v. Dumex Medical Surgical Products, Ltd., 64 F. Supp. 2d 448 (E.D. Pa. 1999) (holding that a website where customers regularly placed items in an online "shopping cart" and paid for them by credit card was not sufficient for general jurisdiction); see also MacCague v. Trilogy Corp., No. Civ. A. 06-887, 2007 WL 839921 (E.D. Pa. Mar. 15, 2007) (holding that a website which customers could use to purchase merchandise as well as reserve sea tours was not sufficient for general jurisdiction). Similarly, it would be unreasonable to establish a precedent that every University website that includes online application submissions establishes general jurisdiction in any forum state, even forum states in which the University has established few, or no, other contacts. Because the court has no

13

specific or general jurisdiction over defendants, the Delaware long-arm statute cannot lawfully be used to serve them, and the present action at bar must be dismissed.[8]

## V. CONCLUSION

For the aforementioned reasons, defendants' motion to dismiss for lack of personal jurisdiction is granted. Plaintiff's motion for a default judgment is denied as moot. An appropriate order shall follow.

---

[8] The court need not consider whether the exercise of personal jurisdiction would be consistent with the defendants' constitutional rights to due process.

14