## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| JOAN T. KLOTH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action 06-CV-244 (SLR) |
| | ) | |
| SOUTHERN CHRISTIAN UNIVERSITY, | ) | |
| BOARD OF DIRECTORS, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## RESPONSIVE BRIEF OF SOUTHERN CHRISTIAN UNIVERSITY
## IN OPPOSITION TO THE
## MOTION FOR RECONSIDERATION OF PLAINTIFF KLOTH

STRADLEY RONON STEVENS & YOUNG, LLP
Kevin W. Goldstein (DE Bar #2967)
Michael P. Migliore (DE Bar #4331)
300 Delaware Avenue, Suite 800
Wilmington, Delaware 19801
(302) 576-5850

August 21, 2007

Attorneys for Defendants
Southern Christian University,
Board of Directors, *et al.*

# 671471 v. 2

**TABLE OF CONTENTS**

Page

Table of Authorities ..................................................................................ii - iii

Nature and Stage of the Proceeding .......................................................... 1 - 2

Summary of Arguments by Southern Christian ..............................................3

INTRODUCTION ........................................................................................4

STATEMENT OF FACTS ...............................................................................5

    A.    The Court's Memorandum Opinion and Order ................................5

    B.    Kloth's Motion for Reconsideration.................................................6

ARGUMENT ...............................................................................................9

    I.    There is No Basis to Reconsider the Decision of the Court to
        Dismiss this Action for Lack of Personal Jurisdiction.........................9

        A.    Relevant Legal Standards.............................................9

        B.    Kloth Can Not Point to Any Changes To The Controlling
            Law, or New Controlling Law, Or New Or Changed Facts ....10

        C.    Kloth Can Not Point To Any Clear Error of Law, Any
            Fact Needing Correction, Or Any Need To Prevent
            Manifest Injustice.................................................14

    II.    The Motion for Reconsideration of Kloth is Fully Without
        Support and Exemplifies a Misuse of the Court's Resources
        and Time .............................................................................16

CONCLUSION.............................................................................................18

# 671471 v. 2

# TABLE OF AUTHORITIES

Page(s)

## Cases

*American Bio Medica Corp. v. Peninsula Drug Analysis Co., Inc.,*
  1999 WL 615175 (D. Del. Aug. 3, 1999) ...............................................................12

*Brambles USA, Inc. v. Blocker,*
  735 F. Supp. 1239 (D. Del. 1990) ...........................................................................9

*Corning Inc. v. SRU Biosystems,*
  2006 WL 155255 (D. Del. Jan. 20, 2006)............................................................9, 10

*Dozier v. Ford Motor Co.,*
  702 F.2d 1189 (D.C. Cir. 1983) .............................................................................17

*Farguson v. MBank Houston N.A.,*
  808 F.2d 358 (5th Cir. 1986).................................................................................17

*Glendon Energy Co. v. Borough of Glendon,*
  836 F. Supp. 1109 (E.D. Pa. 1993) .........................................................................9

*Int'l Shoe Co. v. Washington,*
  326 U.S. 310 (1945)..............................................................................................15

*Karr v. Castle,*
  768 F. Supp. 1087 (D. Del. 1991) .......................................................................9, 10

*Kloth v. Citibank (South Dakota), N.A.,*
  33 F. Supp.2d 115 (D. Conn. 1998) .......................................................................16

*MacLeod v. Georgetown Univ. Med. Ctr.,*
  736 A.2d 977 (D.C. 1999).....................................................................................16

*Max's Seafood Café ex rel. Lou Ann v. Quinteros,*
  176 F.3d 669 (3d Cir. 1999)................................................................................3, 9

*Moore v. Agency for Int'l Dev.,*
  994 F.2d 874 (D.C. Cir. 1993) ..............................................................................16

*Padcom, Inc. v. Netmotion Wireless, Inc.,*
  2004 WL 1192641 (D. Del. May 24, 2004)........................................................10, 15

*Siemens Aktiengesellschaft v. LG Semicon Co., Ltd.,*
  69 F. Supp. 2d 622 (D. Del. 1999) .........................................................................15

# 671471 v. 2

*Solomon v. Fairfax Village Condominium IV Unit Owner's Ass'n,*
    621 A.2d 378 (D.C. 1993) ................................................................................... 16 - 17

*Tinney v. Geneseo Commc'ns, Inc.,*
    2007 WL 2264052 (D. Del. Aug. 8, 2007) ........................................................9, 14

*Toys "R" Us, Inc. v. Step Two, S.A.,*
    318 F.3d 446 (3d Cir. 2003) ...................................................................................10

*Watson v. Englewood Police Dep't,*
    1995 WL 16780 (D.N.J. Jan. 12, 1995) ................................................................17

*World-Wide Volkswagen Corp. v. Woodson,*
    444 U.S. 286 (1980) ...................................................................................11, 14, 15

## Statutes

10 Del. C. § 3104(c) ........................................................................................... 5-6

## Rules

Fed. R. Civ. Pro. 59(e). ........................................................................................3, 9

# 671471 v. 2

## NATURE AND STAGE OF THE PROCEEDING

Plaintiff Joan Kloth ("Kloth"), a citizen of and currently residing in the State of Connecticut, filed a complaint with this Court on April 24, 2006 (D.I. 2), against Southern Christian University (now known as Regions University) and its Board of Directors (collectively referred to herein as "Southern Christian"). On October 5, 2006, Kloth filed an apparent Motion for Summary Judgment (D.I. 8).

Thereafter, on October 20, 2006, Kloth filed an Amended Complaint, captioned as a motion to amend (D.I. 11). On that same date, October 20, 2006, Southern Christian filed its Motion and supporting Brief to Dismiss the complaint for lack of personal jurisdiction (D.I. 12, 13). Southern Christian also filed on October 20, 2006, its response to the Kloth Motion for Summary Judgment (D.I. 14). On October 25, 2006, Southern Christian filed its Response to the Kloth Amended Complaint (D.I. 17).

On November 1, 2006, Kloth filed her Answering Brief in opposition to the Southern Christian Motion to Dismiss (D.I. 19), and filed her Reply Brief (D.I. 20) relating to her previously filed Motion for Summary Judgment.

Thereafter, on November 7, 2006, Southern Christian filed its Reply Brief (D.I. 21) in further support of its prior Motion to Dismiss for lack of personal jurisdiction.

On November 15, 2006, Kloth filed a letter to the Court advising why she had withheld evidence regarding her alleged residency in Delaware (D.I. 22), and filed a purported response to Southern Christian's Reply Brief (D.I. 23).

Less than three weeks later, on December 4, 2006, Kloth advised the Court that she was moving back to her home in Connecticut at the same address that has always been of record with Southern Christian (D.I. 24).

On July 16, 2007, the Court entered its Memorandum Opinion and Order dismissing Kloth's Complaint against Southern Christian for lack of personal jurisdiction over Southern Christian (D.I. 28 and 29).

On July 26, 2007, Kloth filed a Motion requesting additional time to file a motion for reconsideration (D.I. 30), which the Court granted on August 2, 2007 (D.I. 31).

On August 7, 2007, Kloth simultaneously filed her Motion for Reconsideration (D.I. 32) along with a Notice of Appeal to the Third Circuit Court of Appeals (D.I. 33).  On August 8, 2007, the Clerk entered the Notice of Docketing of Record of Appeal to the Third Circuit (D.I. 34).

This is Southern Christian's Responsive Brief in Opposition to the Motion for Reconsideration filed by Kloth.

# 671471 v. 2

## SUMMARY OF ARGUMENTS BY SOUTHERN CHRISTIAN

1.      Under Fed. R. Civ. P. 59(e), a motion of reconsideration shall be granted only if there is "(a) a change in the controlling law; (b) newly available evidence; or (c) the need to correct a clear error of law or fact, or to prevent manifest injustice." *Max's Seafood Café ex rel. Lou Ann v. Quinteros*, 176 F.3d 669, 677 (3d. Cir. 1999).  Kloth's motion should be denied as Kloth has failed to meet any of the standards required under Rule 59(e).  In particular, Plaintiff Kloth failed to identify (a) any change in the controlling law; (b) any newly available evidence (that was not readily available to Kloth previously); or (c) an error of law or relevant fact, or manifest injustice relating to the Court's Memorandum Opinion and Order.  Indeed, plaintiff Kloth fails to present any cogent argument other than that she disagrees with the Court's well-reasoned and thorough analysis and decision.  Unfortunately for Ms. Kloth, merely because she disagrees with the Court is not a sufficient reason to warrant granting a motion for reconsideration.

2.      Upon review of the inconsistent and contrary allegations of plaintiff Kloth, especially in view of the available records and documents, it is apparent that plaintiff has instituted this lawsuit against defendants to inflict some retribution and force defendants to incur substantial attorney's fees and, using her own words, to "shut down [Southern Christian] for good."  Such misuse of the judicial process by plaintiff, even a *pro se* plaintiff, should not be countenanced by the Court.

3

## INTRODUCTION

Plaintiff Joan T. Kloth ("Kloth"), a citizen and resident of the State of Connecticut, sued defendants Southern Christian University,[1] and its Board of Directors or more properly its Board of Regents (collectively referred to herein as "Southern Christian"), in the U.S. District Court for the District of Delaware, alleging breach of an implied contract (to provide a "complete education") and alleging certain religious discrimination. Plaintiff did not provide in her complaint any reasoned basis for this Court to exercise personal jurisdiction over the defendants other than plaintiff's allegations that she was located in Newark, Delaware on a part-time and temporary basis for a brief amount of time. As Southern Christian does not now, nor has it ever had anything more than extremely tenuous contacts with the State of Delaware, Southern Christian properly moved this Court to dismiss this action based upon lack of personal jurisdiction over Southern Christian.

The Court thoroughly reviewed all evidence and information submitted by plaintiff and defendants, and properly dismissed plaintiff's complaint for lack of personal jurisdiction over defendants. (D.I. 28 and 29). Plaintiff Kloth now moves the Court to reconsider its reasoned analysis and decision. Plaintiff, however, does not cite to or point out any change in the controlling law (because there is no such change in the law); any change in the underlying or new relevant facts (because there are no such new or changes in the relevant facts); or (c) any error in law or fact made by the Court in its well-reasoned analysis.

Indeed, upon critical review, all that plaintiff does in her Motion is to re-argue the same allegations and arguments she previously submitted to the Court. This is a misuse of the

---

[1] Southern Christian University has been renamed as Regions University. For purposes of this brief, defendants will collectively be referred to herein as "Southern Christian." Southern Christian, and the Board of Directors are citizens of the States of Alabama, Georgia or Tennessee.

4

Court's time and an abuse of limited judicial resources, as well as a waste of defendants' time and money. The law is clear: a motion for reconsideration is not a vehicle for a party to reargue points already raised by the parties and duly considered by the court. Plaintiff's Motion largely contains a series of re-statements of certain of the findings of the Court, each followed by Kloth's unsupported conclusion that the Court got it wrong. Unfortunately for Ms. Kloth, the Court did not get it wrong. Simply stated, there is no basis for personal jurisdiction over the defendants in Delaware. The mere fact that plaintiff does not agree with the reasoned conclusions of the Court does not warrant, under any stretch of the imagination, the granting of a motion for reconsideration. Accordingly, the Court should deny plaintiff's motion for reconsideration.

## STATEMENT OF FACTS

### A.    The Court's Memorandum Opinion and Order

As plaintiff and defendants well know, in the July 16, 2007 Memorandum Opinion ("Memo Opinion"), the Court thoroughly acknowledged and cited the relevant allegations and facts as presented by both Kloth and Southern Christian, including those allegations relating to Kloth's alleged temporary residence in Delaware. (*See* Memo Opinion, at 2 through 6).

Based upon such information, the Court first reviewed the relevant case law regarding personal jurisdiction under Delaware's Long Arm Statute, 10 Del. C. § 3104(c), and under the standards set for exercising specific or general jurisdiction over a defendant. In its Memo Opinion, the Court fully analyzed and considered whether specific jurisdiction or general jurisdiction existed as against defendants. (*See* Memo Opinion, at 9 through 14). More particularly, the Court explained that the "only 'contacts' between defendants and the forum state of Delaware are the existence of SCU's website, plaintiff's temporary residence in Delaware

5

while searching for a clinical training site, and one other SCU student's residence in Delaware."
(*See* Memo Opinion, at 9).  With respect to specific jurisdiction, the Court analyzed the evidence
and held that "no evidence before the court suggests that defendants purposefully availed
themselves of doing business with Delaware citizens or targeted the contents of their website
toward Delaware." (*See* Memo Opinion, at 11).

In considering general jurisdiction, the Court determined, based upon the
information submitted by plaintiff, that her "temporary residence in Delaware coupled with the
Delaware residence of one additional SCU student is far from the continual or substantial
contacts required for general jurisdiction." (*See* Memo Opinion, at 11).  Moreover, upon review
of the Southern Christian website, the Court held that "it would be unreasonable to establish a
precedent that every University website that includes online application submissions establishes
general jurisdiction in any forum state, even forum states in which the University has established
few, or no, other contacts." (*See* Memo Opinion, at 13).

B.    **Kloth's Motion for Reconsideration**

In her Motion for Reconsideration, Kloth offers approximately 22 paragraphs of
wide-ranging argument citing to approximately 60 pages of Exhibits AA through S, many of
which are newly submitted.  More specifically, in her Motion, Kloth attacks several, largely
irrelevant factual determinations provided in the Memo Opinion, including whether she
"withdrew from SCU," or as Kloth specifically alleged in her complaint, that she "dropped out of
school." *See* Complaint ¶63.

Other than contesting certain irrelevant factual determinations, Kloth appears to
focus her Motion for Reconsideration argument on two issues.  First, Kloth asserts that because
Southern Christian offers on-line education, along with on-campus education at its campuses
located in Alabama and Tennessee, that such a fact supports the exercise of personal jurisdiction

6

over Southern Christian in every state in the United States.  Not surprisingly, Kloth cites to no

case law or support for such a groundbreaking conclusion because no such law exists for such a

proposition.

        Second, Kloth provides three pages of argument (of her entire 12 page Motion),

and cites to many of her attached 18 exhibits, attempting to show that Southern Christian must

have known that she temporarily moved to Delaware from Connecticut three years after she had

started at Southern Christian.  Plaintiff Kloth does not explain why this is relevant, and more

importantly, fails to acknowledge or even attempt to address the facts that:  (a) Southern

Christian's records relating to Kloth show that, during her enrollment at the University and

continuing today, her address is and always has been 320 North George's Hill Road, Southbury,

Connecticut (*see* White Aff. at 3; Turner Aff. at 2, attached to Southern Christian's Motion to

Dismiss [D.I. 12 and 13]); (b) of the approximate 3.5 years that Kloth was enrolled with

Southern Christian, she always resided in Connecticut, and allegedly for the last six months of

that enrollment she maintained temporary housing in Delaware; and (c) of the approximate 17

courses that plaintiff took at Southern Christian, 15 of those classes were taken while she resided

full time in Connecticut and prior to any alleged temporary stay in Delaware.  Further, Kloth

does not address the fact that, even if Southern Christian knew that she had temporary housing in

Delaware during 2005, three years after starting at Southern Christian, and knew that she was in

Delaware for certain communications relating to her grievance and appeal process with Southern

Christian that occurred in 2005, those limited contacts with Kloth in Delaware do not meet the

necessary "minimum contacts" required for this Court to exercise personal jurisdiction over

Southern Christian.

Very telling as to Kloth's permanent residency in the State of Connecticut is the plethora of exhibits already in the record that are now supplemented by several relevant exhibits attached to Kloth's Motion for Reconsideration that conclusively establish that her address *has always been Southbury, Connecticut.* For example, (a) Kloth's August 31, 2005 complaint that she filed with the Better Business Bureau provides her address as ***Southbury, Connecticut*** (*see* Exhibit L to the Kloth Motion); (b) the September 28, 2005 complaint that Kloth filed with the Southern Association of Colleges and Schools again provides Kloth's address as ***Southbury, Connecticut*** (*see* Exhibit M to the Kloth Motion); and (c) the October 7, 2005 consumer statement filed by Kloth with the State of Connecticut (Kloth's state of residence) once again provides Kloth's address as ***Southbury, Connecticut*** (*see* Exhibit O to the Kloth Motion). How Kloth can cite to or rely on these exhibits as showing that *anyone* understood or believed that she resided at any location other than ***320 North George's Hill Road, Southbury, Connecticut***, is at best confusing. Indeed, as argued in Southern Christian's Motion to Dismiss for lack of personal jurisdiction [D.I. 12 and 13], the record evidence plainly shows that plaintiff Kloth has *never intended* to reside in Delaware.[2] Ms. Kloth's connection with Delaware is tenuous, at best. The above exhibits, newly cited by Kloth, only further support and solidify that fact.

---

[2] Southern Christian notes that a March 21, 2007 news article (attached as Exhibit A) appears to provide a different reason for Ms. Kloth intermittently being in Newark, Delaware for part of 2005. The article provides that Ms. Kloth may have, on a part-time and temporary basis, been located in Newark, Delaware in 2005 to allow her daughter to skate and train at The Pond (at the University of Delaware), in Newark, Delaware, in hopes of preparing for the Olympics. The article explains that Ms. Kloth's daughter skated at The Pond during the week and "*returned home* [to Connecticut] on weekends." (Emphasis added). The article also provides that in December 2006, Ms. Kloth's daughter started training in Newburgh, New York, "closer to home." We note that this latter December 2006 date is consistent with the December 4, 2006 notice from Ms. Kloth to the Court [D.I. 24] providing that she was moving back to her 320 North George's Hill Road, Southbury, Connecticut residence "due to a family emergency."

# 671471 v. 2

## ARGUMENT

I.    **THERE IS NO BASIS TO RECONSIDER THE DECISION OF THE COURT TO DISMISS THIS ACTION FOR LACK OF PERSONAL JURISDICTION**

A.    **Relevant Legal Standards**

Rule 59(e) of the Federal Rules of Civil Procedure provides the process for a court to reconsider prior orders or judgments. As this Court has recently explained, a motion for reconsideration is the "functional equivalent" of a motion to alter or amend a judgment under Fed. R. Civ. P. 59(e). *Tinney v. Geneseo Commc'ns., Inc.*, 2007 WL 2264052, at *5, C.A. No. 03-1126 (SLR) (D. Del. Aug. 8, 2007). The purpose of the Rule is to allow a court to "correct manifest errors of law or fact or to present newly discovered evidence." *Max's Seafood Café*, 176 F.3d 669, 677. In that regard, courts have consistently held that a motion for reconsideration "should be granted sparingly and may not be used to rehash arguments which have already been briefed by the parties and considered and decided by the Court." *Corning Inc. v. SRU Biosystems*, 2006 WL 155255, C.A. No. 03-633 (JJF) (D. Del. June 20, 2006); *Karr v. Castle*, 768 F. Supp. 1087, 1090 (D. Del. 1991).

More specifically, a court may only grant a motion for reconsideration if there is: (1) a change in the controlling law; (2) newly available evidence; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." *Max's Seafood Café*, 176 F.3d at 677; *Tinney*, 2007 WL 2264052, at *5. As this Court has also explained, a motion for reconsideration may not properly be based upon "a request that a court rethink a decision already made, *see Glendon Energy Co. v. Borough of Glendon*, 836 F. Supp. 1109, 1122 (E.D. Pa. 1993), and may not be used 'as a means to argue new facts or issues that inexcusably were not presented to the court in the matter previously decided.'" *Brambles USA, Inc. v. Blocker*, 735 F. Supp. 1239, 1240 (D. Del. 1990). *Tinney*, 2007 WL 2264052, at *5.

9

With these standards and principles in mind, there is no question but that plaintiff's Motion for Reconsideration should be denied. Plaintiff has pointed to no change in any law, let alone controlling law; has pointed to no new or changed facts relevant to the issue of personal jurisdiction; and has not identified any clear error of law or fact within the Court's Memo Opinion, or identified any manifest injustice by the granting of Southern Christian's Motion to Dismiss. Indeed, it would be a manifest injustice, and contrary to due process, to exercise personal jurisdiction over Southern Christian given that Southern Christian has, at most, very limited and tenuous contacts with the State of Delaware. *See Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446 (3d Cir. 2003); *Padcom, Inc. v. Netmotion Wireless, Inc.*, C.A. No. 03-983 (SLR), 2004 WL 1192641 (D. Del. May 24, 2004).

## B.    Kloth Can Not Point To Any Changes To The Controlling Law, or New Controlling Law, Or New Or Changed Facts

In her Motion for Reconsideration, Kloth does not, and can not, cite to any change in the controlling law or new controlling law relevant to the personal jurisdiction issue addressed in the Court's Memo Opinion. At best, Kloth argues that the Court misinterprets or misunderstands the case law relevant to personal jurisdiction. Such arguments by Kloth to "rehash" or re-argue legal points already thoroughly considered and decided by the Court are not any reason to grant a motion for reconsideration. *Corning Inc.*, 2006 WL 155255, *1; *Karr*, 768 F. Supp. at 1090.

Although Kloth does reargue the allegations and facts that she already presented to the Court, she fails to identify any changed facts, any new facts or any misunderstood facts that would warrant reconsideration of the Court's reasoned decision. Indeed, the only "facts" argued in Kloth's Motion that are relevant to personal jurisdiction are that Southern Christian

offers classes on-line and that Southern Christian knew that Kloth had taken up temporary

housing in Delaware in February 2005, three years after initially enrolling with the University.

With respect to the fact that Southern Christian offers on-line course work, such

information does not alter in any way the analysis undertaken by and explained by the Court in

its Memo Opinion. Indeed, the Court thoroughly addressed Southern Christian's website under

both the specific jurisdiction and general jurisdiction analyses. (*See* Memo Opinion, at 10, 12,

and 13). Under its specific jurisdiction analysis, the Court concluded that, similar to the

defendant in *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 295 (1980), Southern

Christian "did not purposefully avail themselves of doing business with residents of Delaware

merely because they knew their website could be accessed by residents of any state." (Memo

Opinion, at 10).

Similarly, under its general jurisdiction analysis, the Court noted that the "SCU

website provides general public information, degree program descriptions, admissions, registry

and financial aid information, student resources, an academic catalog, the academic calendar, and

campus *and online courses*." (Memo Opinion, at 13) (emphasis added). Accordingly, the Court

held that "it would be unreasonable to establish a precedent that every University website that

includes online application submissions establishes general jurisdiction in any forum state, even

forum states in which the University has established few, or no, other contacts." (*See* Memo

Opinion, at 13).

Important in this analysis is that, under either specific jurisdiction or general

jurisdiction, there must be a connection of the defendant *with the forum state*. With specific

jurisdiction, as noted by the Court, plaintiff must establish that the "particular cause of action

arose from the defendant's activities within the forum state." Memo Opinion, at 8. Similarly, for

# 671471 v. 2

general jurisdiction, plaintiff must show "that the defendant has continuous or systematic contacts with the forum state." Memo Opinion, at 8, citing *American Bio Medica Corp. v. Peninsula Drug Analysis Co., Inc.*, C.A. No. 99-218 (SLR), 1999 WL 615175 (D. Del. Aug. 3, 1999).

The Court explained that Southern Christian's website is not intentionally directed to Delaware, or indeed, to any particular state. The website does not intentionally direct or target any business to Delaware residents and citizens. In short, Southern Christian's website does not provide the type of commercial contacts *with Delaware* to warrant the exercise of personal jurisdiction, and Southern Christian has not purposefully or knowingly conducted business in Delaware *by directly targeting its website to Delaware*.

Plaintiff Kloth also argues in her Motion for Reconsideration that Southern Christian knew that she had, between approximately February and August 2005, taken up part-time and temporary housing in Delaware. This argument does not help Kloth. More particularly, even if we assume, solely for the purposes of the pending Motion, that Kloth moved part-time and on a temporary basis to Delaware and we also assume that Southern Christian knew that Kloth had a part-time and temporary residence in Delaware for approximately six months, these assumed facts do not alter in any way the Court's analysis relating to personal jurisdiction.

Indeed, while the Court acknowledged that *Southern Christian alleged* that it did not know that Kloth had temporarily taken up residence in Delaware prior to receiving the complaint from Kloth, *see* Exhibit A to Southern Christian's Motion to Dismiss, White Aff., at 2 [D.I. 12 and 13], the Court's analysis does not refer to, cite to, or rely upon that particular allegation. In view of the limited contacts between Southern Christian and Kloth during the

12

February through August 2005 time frame, whether or not Southern Christian knew that Kloth was, on a part-time basis, staying in Delaware during that time, would have no effect on the Court's personal jurisdiction analysis.  As noted by the Court, Kloth's "temporary residence in Delaware coupled with the Delaware residence of one additional SCU student is far from the continual or substantial contacts required for general jurisdiction." (Memo Opinion, at 11).

Although Southern Christian's knowledge about Kloth's temporary "residence" in Delaware is not relevant, it is enlightening with respect to the veracity of Kloth's allegations to critically review the "evidence" presented by Kloth to "show" that Southern Christian knew she was residing in Delaware at times during part of 2005.  In fact, Kloth's own "evidence" directly contradicts her own assertions and plainly shows that she had no intention to reside in Delaware. More specifically,

- plaintiff alleges in her complaint that as of July 20, 2005, *after she allegedly moved to Delaware*, she still resided at 320 North George's Hill Road, Southbury, Connecticut, (*see* Exhibit J to the Complaint);

- as of August 31, 2005, when Kloth filed her complaint with the Better Business Bureau, she attested to the fact that *she resided in Southbury, Connecticut* (*see* Exhibit L to the Kloth Motion);

- as of September 28, 2005, when Kloth filed her complaint with the Southern Association of Colleges and Schools, Kloth again attested to the fact that *she resided in Southbury, Connecticut* (*see* Exhibit M to the Kloth Motion);

- as of October 7, 2005, when Kloth filed her consumer statement with the State of Connecticut, she again advised that *her residence is in Southbury, Connecticut* (*see* Exhibit O to the Kloth Motion); and

13

- plaintiff alleges in her complaint that as of March 18, 2006, she *resided at 320 North George's Hill Road, Southbury, Connecticut* (*see* Exhibit N to the Complaint).

Consequently, there is no doubt that Kloth never intended to reside in Delaware, and that she has always considered and advised others that her residence is 320 North George's Hill Road, Southbury, Connecticut. The record evidence, including the most recent and newly cited exhibits submitted by Kloth, shows that she has always resided in Connecticut. Plaintiff Kloth has never disputed the fact that the address maintained on record *by her* at Southern Christian has always been her Southbury, Connecticut home. There is absolutely no reason for Southern Christian to have any belief other than the fact that Kloth has always resided in, and still today, resides in Connecticut. Such evidence further establishes that any connection between Kloth and Delaware, and thus Southern Christian's alleged contacts with Delaware, were tenuous, temporary, and fortuitous.[3] *World-Wide Volkswagen*, 444 U.S. at 295.

### C.     Kloth Can Not Point To Any Clear Error Of Law, Any Fact Needing Correction, Or Any Need To Prevent Manifest Injustice

In addition to failing to identify new or changed facts, or new or changes to controlling law, plaintiff Kloth does not present in her Motion any clear error of law or clear error of fact in the Memo Opinion or the need to prevent manifest injustice resulting from the Memo Opinion and Order. Kloth instead argues that given the facts and the law, the Court erred in deciding there is no basis to exercise personal jurisdiction over Southern Christian. Such argument, that the court erred and should rethink its analysis, is not a basis for reconsidering a well-reasoned prior decision and order. *Tinney*, 2007 WL 2264052, at *5.

---

[3]     As noted above, it appears that Southern Christian's contacts with plaintiff Kloth in Delaware are more based upon the location of a figure skating training facility for Ms. Kloth's daughter rather than upon any clinical training opportunities related to Ms. Kloth's schooling with Southern Christian. *See* attached Exhibit A.

14

With respect to the point of manifest injustice, even if the Court were to determine that it may exercise personal jurisdiction over Southern Christian, the Court must still determine whether the exercise of jurisdiction would comport with the Due Process Clause. *See Int'l Shoe v. Washington*, 326 U.S. 310, 316 ; *see also Padcom, Inc.*, 2004 WL 1192641, at *6. Southern Christian contends that any such exercise of personal jurisdiction would surely not comport with constitutional notions of due process, and would offend the notions of fair play and substantial justice. *Padcom, Inc.*, 2004 WL 1192641, at *6; *Siemens Akieingesellschaft v. LG Semicon Co., Ltd.*, 69 F. Supp. 2d 622, 624-25 (D. Del. 1999). In that regard, the principles of due process require that the defendant have "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co.*, 326 U.S. at 316 (citation omitted); *Padcom, Inc.*, 2004 WL 1192641, at *6 (citing *Int'l Shoe Co.*). As determined by the Court, the "only 'contacts' between defendants and the forum state of Delaware are the existence of SCU's website, plaintiff's temporary residence in Delaware while searching for a clinical training site, and one other SCU student's residence in Delaware." Memo Opinion, at 9.

These facts and tenuous contacts are analogous to the situation in *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286. In *World-Wide Volkswagen*, the Court held that defendant's "contacts" with the forum state were random and "fortuitous." Like the defendant in *World-Wide Volkswagen*, but for plaintiff Kloth's possible travel to and relocation on a part-time and temporary basis to Delaware several years after enrolling at SCU, there have been no substantial ties between Southern Christian and the State of Delaware.

In view of the above analysis and argument, there is no basis for the Court to reconsider its well reasoned opinion. Specifically, there has been no change in or new

15

controlling law, no change in any relevant facts, no new facts that plaintiff did not have at her

disposal long ago, and no clear error of law or fact or any other reason necessary to prevent

manifest injustice. In short, there are simply no facts to support the exercise of personal

jurisdiction over Southern Christian that in any way comport with the constitutional notions of

due process.

## II.    THE MOTION FOR RECONSIDERATION OF KLOTH IS FULLY WITHOUT SUPPORT AND EXEMPLIFIES A MISUSE OF THE COURT'S RESOURCES AND TIME

Southern Christian is well aware that plaintiff Kloth is a *pro se* party.[4] In view of

that fact, Southern Christian understands and agrees that Ms. Kloth should be afforded some

latitude when it comes to *technical* compliance with the judicial process. However, she should

not be permitted to use her *pro se* status as a justification to ignore the Rules, the law, or the

accepted standards and principles of the judicial process. *See, e.g., MacLeod v. Georgetown*

*Univ. Med. Ctr.,* 736 A.2d 977 (D.C. 1999) (citing *Moore v. Agency for Int'l Dev.*, 994 F.2d 874,

876 (D.C. Cir. 1993) (noting that while *pro se* plaintiffs should be given more latitude than

represented parties, such liberal treatment does not "constitute a license for a *pro se* plaintiff to

ignore the Federal Rules of Civil Procedure"); *see also Solomon v. Fairfax Village Condominium*

*IV Unit Owner's Ass'n,* 621 A.2d 378, 380 n. 2 (D.C. 1993) ("[Plaintiff] must not expect or seek

concessions because of [her] inexperience and lack of trial knowledge and training and must,

when acting as [her] own lawyer, be bound by and conform to the rules of court procedure . . .

---

[4]    Southern Christian notes, however, that Ms. Kloth is not new to the federal court system. *See, e.g., Kloth v. Citibank (South Dakota), N.A.,* 33 F. Supp. 2d 115 (D. Conn. 1998). Moreover, the record in the matter before this Court plainly shows that Ms. Kloth has prior and substantial experience with various federal and administrative judicial systems. In view of this experience, Ms. Kloth surely is aware of the fact that being a *pro se* party does not provide a free pass from meeting certain legal standards and principles. *Kloth,* 33 F. Supp. 2d 115 at 119 (noting that "a pro se party's status does not relieve her of the burden of alleging sufficient facts on which a recognized legal claim could be based").

equally binding upon members of the bar."); *Dozier v. Ford Motor Co.*, 702 F.2d 1189, 1194

(D.C. Cir. 1983) (then-Judge Scalia) (noting that "[a]t least where a litigant is seeking a

monetary award [as in plaintiff Kloth's case at hand], we do not believe *pro se* status necessarily

justifies special consideration (citation omitted).  While such a *pro se* litigant must of course be

given fair and equal treatment, [s]he cannot generally be permitted to shift the burden of

litigating [her] case to the courts, nor to avoid the risks of failure that attend [her] decision to

forego expert assistance").

   More specifically, plaintiff Kloth's *pro se* status does not entitle her to improperly

withhold documents and information (as she plainly has done in this case with the latest

submission of approximately 60 pages of exhibits in her Motion for Reconsideration, and as she

admitted she did with her "Response to Reply" as submitted to the Court on November 15, 2006

[D.I. 22 and 23]).  Such withholding of documents by Kloth appears to have been done to

surprise and therefore prejudice Southern Christian, in direct violation of the rules and principles

of the federal judicial system.  Being a *pro se* party "does not serve as an 'impenetrable shield,

for one acting *pro se* has no license to harass others, clog the judicial machinery with meritless

litigation, and abuse already overloaded court dockets.'" *Watson v. Englewood Police Dep't*,

1995 WL 16780, at *2 (D.N.J. Jan. 12, 1995), quoting *Farguson v. MBank Houston N.A.*, 808

F.2d 358, 359 (5th Cir. 1986).

   Upon review of Kloth's Motion for Reconsideration, especially in view of the

previously presented, and now newly presented records and documents, it is apparent that

plaintiff instituted this lawsuit against defendants as a means of vindictive retribution.  In Kloth's

own words, this lawsuit was designed by Kloth to (a) force the defendants to incur substantial

attorney's fees ("they just screwed themselves and the school because in attorney's fees alone it

will cost them more than the damages they could have assumed"), and (b) "shut down [Southern Christian] for good." (*See* Exhibit K attached to Kloth's Motion).  Such reasons for instituting litigation are hardly considered sound.  Indeed, such unjustifiable reasons, without more, should not be condoned.  More to the point with respect to the pending Motion for Reconsideration, Southern Christian contends that Ms. Kloth knows full well what is required to bring such a motion and to warrant the exercise of personal jurisdiction over Southern Christian.  She also knows full well that her arguments fall far short of meeting the necessary standards for a motion for reconsideration.  Instead of acknowledging that fact, she is using her "*pro se*" status as a strategy to force Southern Christian to incur substantial and unwarranted legal fees, and worse yet, to waste the Court's time and resources.  Such conduct by plaintiff, even a *pro se* plaintiff, should not be countenanced by the Court.

## CONCLUSION

For the foregoing reasons, defendants Southern Christian respectfully request that the Court deny the Motion of plaintiff Kloth seeking reconsideration of the Court's Memorandum Opinion and Order.

STRADLEY RONON STEVENS & YOUNG, LLP

August 21, 2007

Kevin W. Goldstein (DE Bar #2967)
Michael P. Migliore (DE Bar #4331)
300 Delaware Avenue, Suite 800
Wilmington, Delaware  19801
(302) 576-5850

Attorneys for Defendants
Southern Christian University,
and its Board of Directors

18

# 671471  v. 2

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| JOAN T. KLOTH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action 06-CV-244 (SLR) |
| | ) | |
| SOUTHERN CHRISTIAN UNIVERSITY, | ) | |
| BOARD OF DIRECTORS, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

AND NOW, this _____ day of August 2007, this Court having considered the

Motion for Reconsideration of plaintiff Kloth (the "Motion"), the responsive brief in opposition

of defendants Southern Christian University and its Board of Directors (collectively "Southern

Christian"), and any argument of counsel;

**IT IS HEREBY ORDERED**, that the Motion of plaintiff is DENIED.  This

matter is hereby dismissed with prejudice.

_____
The Honorable Sue L. Robinson
United States District Court

# 671471  v. 2

# <u>Exhibit A</u>

# Voices NEWS.COM

*VOICES the Newspaper • VOICES Weekender*

**The Online Newspaper of —**
Southbury, Heritage Village, South Britain, Middlebury, Oxford, Seymour, Naugatuck, Woodbury, Bethlehem, New Preston, Washington, Washington Depot, Roxbury, Bridgewater, Monroe, Sandy Hook and Newtown, Connecticut

03/21/2007

## Local Skater Seeks Sponsors



**Jetika Kloth, 13, has been skating since she was 7. The Southbury resident is seeking sponsors in her quest to become a world class figure skater.**

SOUTHBURY - Jetika Kloth, 13, of Southbury, is seeking sponsors in support of her training to become a world-class figure skater.

"This is a very expensive endeavor," she said, "but I am determined to do this."

Jetika started figure skating at the age of 7. For almost two years, she skated at The Pond in Newark, Del., where she represented the University of Delaware Figure Skating Club, returning to her home in Southbury on the weekends.

In December, 2006, she began training closer to home at Westchester Skating Academy in Greenburgh, N.Y.

Home schooling allows Jet to spend three hours a day on the ice, five days a week. In support of her skating, she takes dance classes two days a week and takes part in Pilates classes and off-ice weight training three days a week.

Her medals so far include a first place at the Morris Open in New Jersey, second place in the Darien Open in 2005 and 2006, first place in the Garren Invitational and second place at the Dorothy Hamill FSC, among others.

To help pay for her time on the ice, Jetika works each weekend as a teaching assistant at Westchester Skating Academy. In addition to ice time, she must pay for lessons, skates, costumes, music and fees associated with competitions and tests.

Her father, Christopher Zanard, is a carpenter. Her mother, Joan Kloth, devotes her time to her daughter's skating career. The family estimates Jet's skating costs at $50,000 to $60,000 per year, which they say is average for a skater of her level.

"Every day, I watch Jetika skate her heart out," her mother said. "She works hard and is so determined to become a top-notch skater with long term dreams of going to the Olympics.

"She is a graceful skater with a wonderful imagination for

Voices - Sports Wire! - 03/21/2007 - Local Skater Seeks Sponsors

choreography. As I watch her jump, spin and move on the ice, I can only wonder how we will continue to afford to keep her dream alive."

Though most students her age are in seventh grade, Jet takes seventh, eighth and ninth grade classes through Laurel Springs School, an accredited on-line home schooling resource center.

When not training, skating or studying, she enjoys knitting, sewing and weekly art classes.

A fund has been set up for Jetika at the New England Amateur Skating Foundation, a non-profit organization whose purpose is to assist competitive amateur skaters at all levels.

Skaters submit bills to the NEASF; payments are made directly to vendors. One hundred percent of donations are used to defray skater's legitimate expenses.

Tax-deductible donations may be made to the NEASF, P.O. Box 6881, Providence, R.I. 02940. Donations should be accompanied by a request that the gift be applied to the Jetika A. Kloth-Zanard Figure Skating Fund.

Both private and corporate donations are welcome.

Those seeking additional information may call Jetika or Joan Kloth, 203-267-7801, or Herb Kaplan of NEASF, 401-861-9266.

©Voices 2007

Motorcycle For Sale

2004 Kawasaki Vulcan 500 LTD cruiser
500cc parallel twin, 6 speed, liquid-cooled
2100 original miles, immaculate condition
Kawasaki Factory Warranty thru 8-30-08
$4,200 O.B.O. Call Kurt at (203) 725-7593

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing

*Responsive Brief of Southern Christian University in Opposition to the Motion For*

*Reconsideration of Plaintiff Kloth* was caused to be served on August 21, 2007 upon the below

noted party at the addressed noted for such *pro se* party by first-class mail, postage pre-paid:


    Joan T. Kloth
    320 North Georges Hill Road
    Southbury, CT  06488-2626



                    Michael P. Migliore (DE Bar #4331)

# 671471  v. 2