RECEIVED
AUG 30 2007
U.S. DISTRICT COURT
DISTRICT OF DELAWARE

UNITED STATES DISTRICT COURT

AND FOR THE DISTRICT OF DELAWARE

CASE NO. 06-244-SLR

| | |
|---|---|
| Joan T. Kloth | APPELLANT/PLAINTIFF |
| Vs. | |
| Southern Christian University;<br>Board of Directors, et.al | APPELLEE/DEFENDANTS |

### Rebuttal to Opposition to Motion for Reconsideration

State of Delaware:
County of New Castle:
SS,

    I, Joan T. Kloth, Appellant/Plaintiff, respectfully requests the reconsideration of the dismissal of Plaintiff's case against Southern Christian University, now known as Regions University and hereafter referred to as SCU not be denied based on the following responses to the Defendant's Motion. Plaintiff wants to reiterate here that her knowledge of the law as a Pro-se is very limited and she feels the Defendant is trying to confuse her with his false restatements of the laws.

Summary of Arguments Rebuttal:
1) Disagree. 1)(a) The Zippo test clearly shows that if a school is interactional via the web, that there is no jurisdiction, (b) Newly available evidence showed that the school's website was not just informational but rather interactional as Distance Learning students attend classes live as well as the submission of papers, tests, etc. via specific website submittal links in the appellee's proprietary Blackboard website software that can only be accessed from their Internet Website using a username and password (c) Zippo Test was inaccurately applied at first because necessary information was not provided in totality to show that the school's website was actually more than just factual but interactional with the students on a daily basis.

2) Deny. Plaintiff has never ever stated that she did this to shut the school down nor is that her intention. Plaintiff's intention has always and still remains to be able to find a clinical site so as to complete the required courses to obtain her sought after degree. Plaintiff developed an excellent rapport with many of the teachers at SCU and it would concern her greatly should their teaching positions be put in jeopardy. Plaintiff requests proof of this alleged statement and is confident the judge would not base her decision on such an alleged statement.

1

Statement of Facts Rebuttal

A. Deny. Court's Memorandum Opinion and Order was based on false and misleading information supplied by the defendant about the interaction of the schools website. In fact, they deliberately refused to admit to their own web page that was submitted into Reconsideration evidence that clearly states by the school that the students attend via the Internet in real time. SCU's site does not target anyone in particular but is open to anyone who wishes to apply whether they live in TN, AL, KY, CT, or DE. They accept students from any location in the world, so long as they can pay. The Defendant is trying to claim that only applications are submitted via the internet, when in reality, classes are attended live via the internet and all paperwork, tests and correspondence is solely maintained and performed directly through their website and it's proprietary Blackboard website software.

B. Deny. As the Plaintiff stated, she never ever withdrew or dropped out, in fact, there are no papers signed by the plaintiff nor submitted via the Internet by the plaintiff stating her desire to withdraw. In fact, it is well documented Plaintiff has continued to seek assistance in addition to searching on her own for 4 years to find a suitable clinic in order to complete the requirements to obtain her degree. Plaintiff was forced not to proceed further as she had only one class left to do and which was her clinical for which she could not find a site and the school refused to assist her in procuring one. Plaintiff has now contacted over 14 schools both distance learning and regular to inquire about whether they assist the student in obtaining a clinical training site. The resounding answer to this question was a YES; we do as it is very important to assist the student with this process.

As to citing case law, this is a very new and fresh ground for Internet law, hence why the Zippo Test was created. Plaintiff did, in fact, site several cases that proved her claim for jurisdiction.

As to Plaintiff's residence in DE, Plaintiff's original evidence clearly shows that she resided in Delaware since about February of 2005 but officially moved there on May 29, 2005 as was evidenced by her lease at Chelsea on the Square. In addition, the numerous utility bills, as well as income and unemployment submitted with the original complaint, clearly would indicate that the plaintiff was a resident of DE. Plaintiff returned on the weekends to CT to spend time with her husband and her daughter to spend time with her Dad. The daughter's father should have no bearing as to whether or not the plaintiff resided in DE.

As for using her CT address to file complaints with the BBB, AG and so on, Plaintiff had to use an address where she knew for sure that she would get her mail as well, when she filed with CT agencies, she could not use her DE address. But for any complaints lodged in DE, the plaintiff used her DE address, as that would have been the one they would have accepted. Plaintiff's main home for 2.5

years during the business week was DE. This is much like having a summer home in another state or renting her primary residence while living in another state temporarily to work. Think of the plaintiff's home in CT as her summer or reserve home that she had to turn over to someone else to pay the bills and care for while she and her daughter moved to DE for school/work related reasons and thus making their main place of living while trying to find a clinical training site, DE.

In addition, in every one of these documents, the Plaintiff clearly states that she and her daughter moved to DE, and each and every one of these complaints were answered by the defendant, thus they had to read it to answer the complaints.

As to the plaintiff's daughter's figure skating being changed to WSA, it just says in the article that she began to skate closer to home. What it does not say is that this was only on Fridays when we returned to spend time with plaintiff's husband and the father of her child. As well, the family emergency that brought us back was our financial inability to continue to train in DE without the plaintiff being able to complete her degree and get a stable job.

In addition, the article on Plaintiff's daughter was taken from a fund raising packet that had been given to Jean Dunn, who worked for the paper, Voices. No, interview was ever conducted. The statements used came from the fund raising data in the fund raising portfolio. (Exhibit of letters) Ms. Dunn used her journalistic "poetic" license to write a story about Plaintiff's daughter that would hopefully garner some support to raise the necessary funds through a non-profit organization where a fund had been set up for Plaintiff's daughter to help pay for her skating. The reality is that if PLAINTIFF had been able to complete Plaintiff's degree, PLAINTIFF could have gotten employment and would not have needed help financially. Furthermore, Ms. Dunn felt that to include Plaintiff's educational situation in the article on Plaintiff's daughter, it would have taken the focus off Plaintiff's daughter, and placed it on me. Ms. Dunn was trying to highlight Plaintiff's daughter's gift, and thus felt it necessary to NOT include this school issue in the article. PLAINTIFF felt that publicizing this issue in the paper was not a good idea for the school as it was negative publicity and PLAINTIFF did not want to use that to solve Plaintiff's problem with them. PLAINTIFF felt that was not the ethical thing to do.

C.  As to the rest of the defendant's statements, PLAINTIFF flatly denies that PLAINTIFF has not proved the relevant legal standards for jurisdiction. In fact, PLAINTIFF believes that as a pro-se, the evidence PLAINTIFF provided in the original case and in Plaintiff's Motion for Reconsideration clearly shows that DE does have jurisdiction.

D.  Due to the school's neglect and disregard for the implied contract to provide an education and ultimately the desired degree to the Appellant/Plaintiff, she has been put in such a financial bind that she cannot even afford an attorney to help

3

her with the justified action against SCU, thus putting Appellant/Plaintiff at an additional disadvantage.

Based on the above facts, the Appellant/Plaintiff respectfully requests this Court reconsider hearing this case.

Respectfully submitted:

_____  8-27-07
JOAN T. KLOTH, PRO-SE
320 NORTH GEORGE'S HILL ROAD
SOUTHBURY, CT 06488
203-267-7801

*Joan T. Kloth-Zanard*
*320 North George's Hill Road*
*Southbury, CT 06488*
*203-267-7801*

Dear Prospective Sponsors:

    Every day, I watch Jetika skate her heart out. She works hard and is so determined to become a top-notch skater with long term dreams of going to the Olympics. She is a graceful skater with a wonderful imagination for choreography. As I watch her jump, spin and move on the ice, I can only wonder how we will continue to afford to keep her dream alive.

    With your help, Jetika has a chance to succeed and become the skater she dreams of. With your help, Jet can accomplish her goals and we can know that all this hard work was not in vain.

    Please consider even a small tax-deductible donation to help keep Jetika continually training and progressing. It would be a shame to let this beautiful and talented young lady give up something she is so wonderful at.

Sincerely,

*Joan T. Kloth*

*Jetika Angela Kloth-Zanard*
*320 North George's Hill Road*
*Southbury, CT 06488*
*203-267-7801*

  Hi, my name is Jetika Kloth. I have a dream to be an Olympic Skater. I am a 13 years old, and though I should be in 7th grade, I am taking 7th, 8th and 9th grade classes through my home school program at Laurel Springs. I am home-schooled so that I can have enough time to skate and still go to school. I have been figure skating since I was about 7 years old. For almost 2 years, I skated in Newark, DE at the Pond where I represented the University of Delaware Figure Skating club. It was very hard on my mom and dad, because she and I would go down to Delaware on Sundays and did not return until Thursday nights so we could see my dad. So starting in December of 2006, we returned to training closer to home and thus switching my training facility and coaches to the Westchester Skating Academy in Greenburgh, NY and then only going to Delaware as needed. My lifetime dream is to medal at the Olympics in Figure Skating.

  I train 3 to 4 hours a day on the ice, which comes out to about 15-20 hours a week, all year long. I also take dance classes 2 to 3 times a week along with Pilates and off-ice weight training. In addition to these expenses for my ice skating, we must pay for the time I am on the ice skating, my lessons with my coaches, skates, blades, costumes, shows and competitions many times a year. I also take an art class once a week, so I can use the other side of my brain as my Mom says. My mom is very organized and has created an Excel sheet to track everything.

  My Dad, Christopher Zanard, is a very hardworking carpenter and does all that he can to help pay for my skating. My mom has been trying to look for a job but because of the odd ice hours and times, most jobs will not hire her. To help out, I work as a teaching assistant for the WSA Learn to Skate Program. Right now my skating costs around $50,000 to 60,000 a year. This amount is the average amount for a skater at my level.

  My parents and grandparents are trying their best to pay my skating bills but unfortunately my parents are having some trouble and my grandparents are getting older and want to retire. Therefore we are deeply in need of some financial assistance. A fund has been set up for me at the New England Amateur Skating Foundation, and all donations to NEASF qualify as tax deductible under section 501 (c)(3) of the Internal Revenue Code. (Please see the accompanying flyer about this.) The full amount of your donation will be used for my skating related expenses, and no administrative fees are charged, though you can ask to have 10% of your donation applied to administrative fees to help the organization out. Please consider a donation no matter how big or small to help me with my figure skate training.

*Private and corporate donations can be made by sending a check to:*
*New England Amateur Skating Foundation or NEASF (Please see important NOTE below)*
*P.O. Box 6881*
*Providence, RI 02940*

*PLEASE NOTE: It is very important for you to either include the coupon in this package with your tax-deductible donation or put my name on separate piece of paper stating you suggest using this donation for Jetika A. Kloth-Zanard. As well, if you provide me with your name and address, I will send you updates on my progress and so will my coaches. I have also included a pre-addressed envelope to NEASF for your donation. If you have any questions about the Foundation, please call Herb Kaplan at (401) 861-9266.*

*Thank you for helping me to achieve my skating dreams!*

*Sincerely,*

*Jetika*

## CERTIFICATION of MAILING

This is to certify that a copy of the foregoing was sent on this 27th day of August, 2007 to all defendants as follows:

Southern Christian University
And it's Board of Directors
C/O Kevin Goldstein and Michael Migliore
300 Delaware Ave, Suite 800
Wilmington, DE 19801

Joan T. Kloth
Plaintiff, Pro-Se

5



300 No. Georges Hill
Southbury CT. 06488

US. District Court
Court Clerk
844 North King St.
Wilmington, DE. 19801