UNITED STATES DISTRICT COURT

AND FOR THE DISTRICT OF DELAWARE

CASE NO. 06-244-SLR

Joan T. Kloth                                                                                           PLAINTIFF

Vs.

Southern Christian University;                                                              DEFENDANTS
Board of Directors, et.al

### Motion for Change of Venue

I, Joan T. Kloth, the Plaintiff, respectfully requests a change of venue for Case No. 06-244-SLR from Delaware District Court, located at 844 North King Street, Rm 4209, Wilmington DE 19801 to the Connecticut District Court, located at 300 Grand Avenue, Waterbury, CT 06702, this is per the approval of the US 3rd Circuit Appeals Court, who agreed that there is a Lack of Jurisdiction for Delaware to pursue the case but that a Change of Venue to a state with Jurisdiction would be allowed. Due to this Lack of Jurisdiction in DE and based on the following reasons, the Plaintiff respectfully requests a change of venue for the following reasons:

    1.    Pursuant to 28 U.S.C. § 1391 and §1406, which provide that "A civil action wherein jurisdiction is not founded solely on diversity or citizenship may, be brought only in (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; coupled with 28 U.S. C.§1391 (c) which provides that "For Purposes of venue under this chapter, a defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced. In addition, and in combination with the District Court of DELAWARE and the US Third Circuit Court of Appeals conclusion for lack of personal jurisdiction, the Plaintiff has a right to change of venue to a court that does have jurisdiction. (US Court of Appeals for the Third Circuit Case No. 07-3376 & 07-4598, Kloth Vs. Southern Christian University, et.al. Opinion dated August 5, 2008. Bottom of Page 10 to top of Page 11).

    2.    Under the Interstate and International Procedure Act also known as the Uniform Act, a provision exists authorizing jurisdiction in the event that an act or omission outside the state caused injury in the state. This act was used to develop the Long Arm Statute

    3.    The Connecticut Long Arm Statute, C.G.S. § 33-411 states the following concerning jurisdiction over the defendant in allowing service to out of state businesses:

        a.    Transaction of any business within the state of CT.

    b.  Commission of a tortuous act within the state of CT.

    c.  Ownership, use or possession of real estate in CT.

    d.  Contact to insure any person, property or risk located in the state of CT.

  4.  Under CT C.G.S. §33-411(c)(2) of the Connecticut Long Arm Statute, the Defendant solicited business within CT via it's internet advertisements and availability of it's toll free number and in Plaintiff's case, also sent advertisements, student loan applications, monetary returns from student loans for books via the United States Postal Service.

  5.  Under *Inset Systems v. Instructional Set, No. CV-3;95CV-01314(AVC)* in the United States District Court of Connecticut, April 17, 1996, C.G.S. §33-411(c)(2) further states that "Every foreign corporation shall be subject to suit in this state by a resident of this state or by a person having a usual place of business in this state, whether or not such foreign corporation is transacting or has transacted business in this state and whether or not it is engaged exclusively in interstate or foreign commerce, on any cause of action arising (2) out of any business solicited in this state by mail or otherwise if the corporation has repeatedly so solicited business, whether the orders or offers relating thereto were accepted within or without the state…"

    a.  The defendant did continuous communicate, accept payments, registration, class work, classroom participation live online through their website via the Internet, United States mail and through telephone communication.

    b.  Defendant allowed the plaintiff under the Amended Higher Education Act of 1998 to apply for and receive student aid in the form of federal government loans that were used by the Defendant to pay for the plaintiff's education. This application process begins online with registration and then with follow-up paperwork sent to the plaintiff via the United States Postal Service from the Defendant's financial aid offices.

  6.  In March 1995, under the *Inset Systems v. Instructional Set* lawsuit, the courts determined that the defendant's continuous advertising on the Internet, which includes at least 10,000 access sites in CT, was much like regular printed advertisements as it could be electronically printed and thus accessed again and again by many more potential consumers.

  7.  Furthermore, the same court for the *Inset Systems* Lawsuit concluded that advertisement via the Internet is solicitation of a sufficient repetitive nature to satisfy subsection (c)(2) of the Long Arm Statute of CT, C.G.S. §33-411.

8. In addition, minimum contacts comporting with due process under the Fourteenth Amendment has been satisfied because the defendant used and continues to use the Internet, as well as a Toll Free number and by using the United States Postal Service, to try to conduct business within the state of Connecticut.

9. The basis for minimum contacts test is "that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws", thus giving CT jurisdiction over the Defendant.

10. Furthermore, the Defendant readily supplied interested potential customers including the Plaintiff with catalogs sent via the United States Postal Service and available online through their website and having circulation in CT, provided products on order… and demonstrated its readiness to initiate telephone solicitation of CT customers," and thus it purposefully availed itself of the privilege of doing business within the state and therefore, could reasonably be expected to be hailed into court. *See McFaddin*, 354 F. Supp. 1166 and *Inset Systems v. Instructional Set, No. CV-3;95CV-01314(AVC)*.

11. In addition, the Defendant directed its advertising activities via the Internet and its toll-free number toward not only the state of Connecticut, but to all states and countries. The Internet as well as toll-free numbers are designed to communicate with people and their businesses in every state. Advertisement on the Internet can reach as many as 10,000 Internet users within Connecticut alone. Further, once posted on the Internet, unlike television and radio advertising, the advertisement is available continuously to any Internet User. Thus the Defendant has purposefully availed itself of the privilege of doing business within Connecticut. (*Inset Systems v. Instructional Set, No. CV-3;95CV-01314(AVC)*).

12. In *Zippo Manufacturing v. Zippo Dot Com's* case, 952 F. Supp. 1119 (W.D. Pa 1997) because Zippo Dot Com's contracts were almost entirely electronic, consisting of filling out online agreements and accessing online agreements, Zippo does do business in PA.

    a. The defendant in this case used online contracts and agreements for school registration as well as all classes were conducted online through their proprietary software, BlackBoard, maintained on their mainframe computer at the Defendant's home state of Alabama.

    b. All student aid requests were also made online and then the Defendant mailed via the U.S. Postal service all paperwork for said federal student loans to the Plaintiff at her home in CT.

      c.      All the Plaintiff's paperwork, tests and reports as well as reviews were done online and sent through the defendant's proprietary software, BlackBoard, to the school and her professors through the internet online.

13.    In the Zippo Case, the courts divided website into 3 distinct types related to commercial activity over the Internet.

      a.      A defendant enters into a contract that involves the "knowing and repeated transmission of computer files over the internet.

           (i)      Defendant repeated transferred course work, live class transmissions with real time transmissions and communication between the defendant and the plaintiff.

           (ii)     Defendant listed and scored all of the Plaintiff's tests and report grades online where the Plaintiff had to log in with a special username and password to retrieve them from the Defendant's home mainframe computers in Alabama.

           (iii)    Continual email and phone communication were maintained between the Plaintiff and her professors, student advisors, admissions office, registrar's office, and other hired school personnel.

      b.      A Passive Website that merely contains posted information.

           (i)      Since the defendant clearly was not just posting information on their website but giving access via special username and password to their proprietary software maintained on their campus in Alabama, Defendant is NOT a passive website but interactive.

      c.      Interactive website where the user can exchange information with the host computer.

           (i)      Plaintiff exchange information on a regular almost daily basis with the host computer in Alabama when she logged into her live online classes and conducted a live discussion with the professor and other students in her class.

           (ii)     As well, some of the Plaintiff's classes were archived, which means they were saved videoed classes that were maintained on the campus in Alabama and then transmitted over the Internet to the Plaintiff to log into to and watch.

  (iii) Plaintiff sent all of her work, including but not limited to her reports and research through the defendant's proprietary software, which logged it into the Defendant's mainframe computer and system in Alabama for distribution to the Plaintiff's professors.

  (iv) All of the Plaintiff's tests were taken online through their proprietary software to be distributed to her professors. Tests where either automatically graded or hand-graded by her professors, through the Defendant's proprietary software, which allows access and transmission of all work to and from the Plaintiff, the school and the professors.

14. Furthermore, jurisdiction is determined by the level of activity and commercial exchange of information through the website.

 a. In the plaintiff's case, all educational activity was conducted solely through the Internet. In fact, the reason plaintiff could not complete here degree is because the school and it's professor, Dr. Wayne Perry, refused to have any communication with the Plaintiff's potential clinical training site, except via the internet and email. No clinical sites would accept this behavior as they needed to also have one on one communication with the professor via the telephone as needed.

 b. As well, the plaintiff registered for all of her classes online through the defendant's website.

 c. Plaintiff also maintained continuous email contact for the first 1.5 years of her degree with her Advisor, Marvin Cox, before he was let go and then continued this contact with her new advisor, Trisha Baker.

 d. Plaintiff also completed her school application and course selection online and sent it via the internet to the defendant, for all of her online courses to be taken through the defendant's proprietary software, which requires special username and password.

15. In *Grunberger Jewelers v. Leone, Civil Action No. 3:03CV647 (CFD) of the US District Court of CT*, a tortuous act was committed when the defendant caused personal injury to person or property within the state of CT.

 a. Plaintiff was caused irreparable harm when the defendant refused to assist her in obtaining a clinical training site and discriminated against her religiously. This action by the defendant left the plaintiff $60,000 in debt for student loans on a degree she could

        not complete because the defendant breach their contract to provide a complete education. Plaintiff has contacted over 110 possible clinical sites, but none would or could take her because of her school's failure to create a personal rapport with them, other than through the Internet via email.

    b.    As well, plaintiff was an Honor Roll student, whose work has been published in trade sites and magazines. In fact, one of the Plaintiff's professors thought she was a Doctoral student and not just going for her masters. Thus the Plaintiff contends that the defendant's refusal to assist her in obtaining a site can therefore only be based upon her religious differences and not her academic status.

    c.    Furthermore, on August 2, 2006, just one week after the defendant was served the lawsuit that included Religious Discrimination; the defendant attempted to change the name of the school from Southern Christian University to Regions University. Regions Financial Corporation immediately sued the Defendant on September 29, 2006 for copyright infringement. The defendant immediately was forced to change the name again, this time to Amridge University.

16.    In *Grunberger Jewelers v. Leone under Par*, the court held that a single telephone transaction was sufficient under 59-52(b).

    a.    The Plaintiff made many phone calls and had many phone conversations with the defendant's staff and professors, including an Appeals Committee Hearing held over the phone between the Plaintiff and the defendant's board of directors on August 24, 2005.

17.    Plaintiff's state of CT has jurisdiction Pursuant to 28 U.S.C. § 1391, §1406, C.G.S. § 33-411 for the following reasons:

    a.    Plaintiff became apprised of the defendant's educational institution while residing in her permanent home state of CT via the Internet.

    b.    Plaintiff received both email and regular mail from the Defendant concerning the defendant's school, then referred to as Southern Christian University, and now referred to as Amridge University, while residing in her permanent home in CT.

    c.    Plaintiff applied for entrance into the Defendant's school while residing in her permanent home in CT via the Internet.

  d.  Plaintiff received and signed student loan papers while residing in her permanent home in CT both via the Internet and the U.S. Postal Service.

  e.  Plaintiff attended the majority of her classes online while living in her permanent home in CT.

  f.  Plaintiff paid any and all additional expenses for her schooling with the defendant from her accounts located in her permanent home in CT.

  g.  Plaintiff had repeated telephone conversations and live online chats from her permanent home in CT with the Defendant.

  h.  Defendant called the plaintiff on her CT landline on numerous occasions.

  i.  Defendant emailed repeatedly to the Plaintiff's email accounts that are based and paid for through plaintiff's CT permanent home.

  j.  All registration and information related to the Plaintiff's education with the Defendant are listed at the Plaintiff's permanent home in CT.

  18. Furthermore, Plaintiff only moved to DE because she could not find a clinical training site in CT, NY or NJ and attempted to try DE for a clinical training site. While in DE, Plaintiff lived there during the base of the business week and thought that it was more appropriate to file a lawsuit against the defendant there. But due to financial constraints and inability to procure a clinical training site, Plaintiff was no longer able to continue to live in DE and was forced to return to CT.

  This financial devastation caused by the defendant's breach of contract and religious discrimination prevents the Plaintiff from filing in Alabama as she cannot afford to travel to attend court there and cannot afford the cost of an attorney to represent her there.

  19. In addition, Plaintiff was unaware that a change of Venue was an option when her case was first dismissed in the District Courts and plaintiff had instead pushed the case into Appeals court unaware of this option. Having only recently found this out, as a pro-se, plaintiff should be entitled to a change of venue to a state that does have jurisdiction over this matter as the case was only dismissed on a lack of jurisdiction and not on the merits of the case.

  20. Plaintiff has tried diligently to obtain legal counsel to handle this case but because she is financially indigent, no attorney would take the case. In order for Plaintiff to protect her legal rights, plaintiff had no choice but to file a suit pro-se. As such, Plaintiff should be afforded the leniency necessary to help her proceed with this case

without further financial harm that would occur by forcing her to file this case in Alabama.

21.     In good faith, Plaintiff paid for all her classes that were required for obtaining her degree with the understanding upon completion she would obtain a degree allowing her to sit for her licensure test and to become gainfully employed in a career that would help people, while providing her family with a reasonable income and normal life with normal expenses. Instead the Plaintiff finds herself and her family on the brink of bankruptcy, heavily in student loan debt for a degree she cannot get DUE to the Defendant's lack of cooperation, NOT ONLY WITH PLAINTIFF BUT WITH THE MANY CLINICAL SITE PERSONNEL, and DEFENDANT FINDS HERSELF fighting for something that she should not have been forced to fight for.

WHEREAS, the Plaintiff respectfully requests that the Court allow a change of venue to the Connecticut District Court, located at 300 Grand Street, Waterbury CT 06702 due to the lack of jurisdiction in DELAWARE and to help reduce the financial and emotional burdens brought about by the Defendant's breach of contract and religious discrimination based on the Plaintiff's refusal to assist the Defendant in providing her a complete education as per their obligation as an educational institution.

_/s/ Joan T. Kloth_                                                 Dated: 8-21-08

Attorney for N/A.
Joan T. Kloth, Below-Plaintiff
Plaintiff/Plaintiff is pro-se

## CERTIFICATION of MAILING

This is to certify that a copy of the foregoing was sent on this 21 day of August, 200 8 to all defendants as follows:

Southern Christian University
And it's Board of Directors
C/O Kevin Goldstein
300 Delaware Ave, Suite 800
Wilmington, DE 19801

                                                      Joan T. Kloth
                                                      Plaintiff, Pro-Se



Kloth-Zanard
300 North George's Hill Rd.
Southbury, CT. 06488

US District Court
District of Delaware
844 North King St., Rm. 4309
Wilmington, DE 19801

FIRST CLASS

U.S.M.?
X-RAY